1  LUCIA E. COYOCA (SBN 128314)
       lec@msk.com
2  BRADLEY J. MULLINS (SBN 274219)
       bym@msk.com
3  ALEXANDRA L. ANFUSO (SBN 333440)
       ala@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
5  Los Angeles, CA 90067-3120
   Telephone:  (310) 312-2000
6  Facsimile:  (310) 312-3100

7  Attorneys for Defendants The Walt Disney
   Company, and Disney Enterprises, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11 | JOHN WILLIAM KAIPO ENOS, an        | CASE NO. 2:23-cv-05790-DSF-AGRx
   | individual and JOHNSON             |
12 | ENTERTAINMENT, LLC, a Native       | Hon. Dale S. Fischer
   | Hawaii limited liability company,  |
13 |                                    | **DEFENDANTS THE WALT**
   |            Plaintiffs,              | **DISNEY COMPANY, AND**
14 |                                    | **DISNEY ENTERPRISES, INC.'S**
   |        v.                          | **NOTICE OF MOTION AND**
15 |                                    | **MOTION FOR SUMMARY**
   | THE WALT DISNEY COMPANY, a         | **JUDGMENT**
16 | Delaware corporation; DISNEY       |
   | ENTERPRISES, INC., a Delaware      | Date:        April 7, 2025
17 | corporation; and DOES 1-10, inclusive, | Time:        1:30 p.m.
   |                                    | Courtroom:  7D (First Street Courthouse)
18 |            Defendants.             |
   |                                    | Complaint filed:  July 18, 2023
19 |                                    | FAC Filed: November 22, 2023
   |                                    | Trial Date: July 29, 2025
20 |                                    |

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

20505748.3

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on April 7, 2025, in the courtroom of the Honorable Dale S. Fischer, of the United States District Court for the Central District of California, First Street Courthouse, 350 W. First Street, Courtroom 7D, Los Angeles, CA 90012, at 1:30 p.m., or as soon thereafter as the matter may be heard, Defendants The Walt Disney Company, and Disney Enterprises, Inc. ("Defendants"), shall and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in favor of Defendants and against Plaintiff John William Kaipo Enos and Johnson Entertainment, LLC, ("Plaintiffs").

This Motion is made on the following grounds:

1. Plaintiffs' copyright infringement claim should be dismissed because of Defendants' prior independent creation of its blue-eyed, ukulele-playing turtle character, 'Olu Mel.

2. Plaintiffs' copyright claim should be dismissed because Plaintiffs do not have a protectable copyright interest in any Honu character that pre-dated the creation of 'Olu Mel.

3. Plaintiffs' copyright infringement claim should be dismissed because Plaintiffs cannot establish a reasonable possibly that the creators of 'Olu Mel had access to Honu before creating 'Olu Mel, and Plaintiffs cannot satisfy the "high bar" to demonstrate that 'Olu Mel and Honu are strikingly similar.

4. Plaintiffs' copyright infringement claim should also be dismissed because Plaintiffs cannot establish that 'Olu Mel and Honu are substantially similar.

5. Plaintiffs' Lanham Act claim should be dismissed because it is barred by the doctrine of laches.

6. Plaintiffs' Lanham Act claim should also be dismissed because Plaintiffs have failed to establish that they have priority of use in a protectable mark.

7. Plaintiffs' Lanham Act claim should be dismissed because, as to the one registered trademark in which Plaintiffs have the presumption of ownership, they cannot establish a likelihood of confusion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on February 10, 2025. Declaration of Bradley J. Mullins, ¶ 42.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendants' Separate Statement of Undisputed Facts, the Declaration of Bradley J. Mullins, the Declaration of Daniel Jue, the Declaration of Fabiola Garza, the Declaration of Ellen Seiter, and any such other evidence and argument as may be introduced at the time of the hearing.

DATED: February 14, 2025          MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Lucia E. Coyoca
    Lucia E. Coyoca
    Attorneys for Defendants

Mitchell
Silberberg &
Knupp LLP

20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................13

II.   RELEVANT BACKGROUND FACTS .....................................14

    A.    Plaintiffs' "Honu by the Sea" ........................................14

        1.    Plaintiffs' Purported "Character" Honu ...................15

        2.    Plaintiffs' Limited Exploitation of Honu ................16

        3.    Enos's Contacts with Individuals Associated with Disney ......16

    B.    The Independent Creation of Defendants' Character, 'Olu Mel ........17

    C.    The Litigation .............................................................18

    D.    Procedural History .....................................................19

III.  SUMMARY JUDGMENT STANDARD ...................................19

IV.   PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM FAILS .............20

    A.    Defendants' Prior Independent Creation Defeats Plaintiffs' Copyright Infringement Claim As A Matter Of Law ........................20

    B.    Plaintiffs Have No Character Copyright In Standing Honu or the Honu Mascot ...................................................................21

    C.    Plaintiffs Cannot Establish Copying Of Any Depiction Of Honu......23

        1.    Plaintiffs Cannot Establish Access To Any Version of Honu.......................................................................23

        2.    No Depiction Of Honu Was Widely Disseminated.................25

    D.    Plaintiffs Cannot Overcome The Lack Of Access Evidence By Claiming Striking Similarity.................................................26

    E.    'Olu Mel and Honu Are Not Substantially Similar ............................31

V.    PLAINTIFFS' LANHAM ACT CLAIM FAILS..........................34

    A.    Laches Bars Plaintiffs' Lanham Act Claim ......................................34

Mitchell
Silberberg &
Knupp LLP

20505748.3

4

# TABLE OF CONTENTS
## (continued)

<u>**Page**</u>

       1.     Plaintiffs' Delay Was Unreasonable..........................................34

       2.     Defendants' Suffered Prejudice Due To Plaintiffs' Delay.......36

  B.    Plaintiffs' Lanham Act Claim Fails on the Merits............................37

       1.     Plaintiffs Cannot Establish Priority of Use .............................37

  C.    Plaintiffs Cannot Establish Likelihood of Consumer Confusion .......39

VI.    CONCLUSION ...........................................................................42

Mitchell
Silberberg &
Knupp LLP

20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
    600 U.S. 412 (2023) ............................................................. 37

*Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*,
    2022 WL 3210698 (9th Cir. Aug. 9, 2022) ........................... 41

*Aliotti v. R. Dakin & Co.*,
    831 F.2d 898 (9th Cir. 1987) ............................................... 29

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) .......................................... 39, 42

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138 (9th Cir. 2009) ........................................ 26, 38

*Audio-Technica Corp. v. Music Tribe Com. My Sdn. Bhd.*,
    2022 WL 1423223 (C.D. Cal. May 5, 2022) ......................... 38

*Batiste v. Lewis*,
    976 F.3d 493 (5th Cir. 2020) ............................................... 25

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) ............................................. 30

*Bernal v. Paradigm Talent & Literary Agency*,
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................... 23, 24, 25

*Bliss Collection, LLC v. Latham Companies, LLC*,
    2021 WL 5413796 (E.D. Ky. Mar. 16, 2021),
    *aff'd*, 82 F.4th 499 (6th Cir. 2023) ...................................... 27

*Briggs v. Blomkamp*,
    70 F. Supp. 3d 1155 (N.D. Cal. 2014),
    *aff'd*, 714 F. App'x 712 (9th Cir. 2018) ......................... 26, 27

*Cavalier v. Random House*,
    297 F.3d 815 (9th Cir. 2002) ............................................... 31

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................... 19, 23

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002)..................................................................20, 21

*Clover v. Tesfaye*,
   2021 WL 4705512 (9th Cir. Oct. 8, 2021) .............................................27

*Columbia Pictures Indus., Inc. v. Embassy Pictures*,
   1982 WL 1274 (C.D. Cal. May 27, 1982)...............................................30

*Daniels v. Walt Disney Co.*,
   958 F.3d 767 (9th Cir. 2020).................................................................21

*Data E. USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988).................................................................28

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015).................................................................13

*E–Systems, Inc. v. Monitek*,
   720 F.2d 604 (9th Cir. 1983).................................................................35

*Echo Drain v. Newsted*,
   307 F. Supp. 2d 1116 (C.D. Cal. 2003)...............................................39

*Edge Wireless, LLC v. U.S. Cellular Corp.*,
   2004 WL 1661992 (D. Or. July 23, 2004) ...........................................40

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006).................................................................31

*Gable v. Nat'l Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010),
   *aff'd* 438 F. App'x 587 (9th Cir. 2011) .............................................23, 26

*Granite Music Corp. v. United Artists Corp.*,
   532 F.2d 718 (9th Cir. 1976)................................................................27

*Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*,
   398 F. Supp. 3d 494 (D. Ariz. 2019)....................................................32

Mitchell
Silberberg &
Knupp LLP

20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Grupo Gigante SA De CV v. Dallo & Co.*,
  391 F.3d 1088 (9th Cir. 2004)...................................................................34

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
  668 F.Supp.3d 1025 (C.D. Cal. 2023),
  *aff'd*, 2024 WL 4750497 (9th Cir. Nov. 12, 2024) ......................................35, 36

*Helix Env't Plan., Inc. v. Helix Env't & Strategic Sols.*,
  2020 WL 2556341 (S.D. Cal. May 20, 2020) ...................................................41

*Hoff v. Walt Disney Pictures*,
  2019 WL 6329368 (C.D. Cal. Aug. 19, 2019) ...................................................22

*Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*,
  559 F.3d 985 (9th Cir. 2009) .........................................................................35

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) .........................................................................34

*JL Beverage Co., LLC v. Beam, Inc.*,
  899 F. Supp. 2d 991 (D. Nev. 2012) ..............................................................40

*Johannsongs-Publ'g Ltd. v. Lovland*,
  2020 WL 2315805 (C.D. Cal. Apr. 3, 2020),
  *aff'd*, 2021 WL 5564626 (9th Cir. 2021) ........................................................33

*Jones v. Twentieth Century Studios, Inc.*,
  2023 WL 9051282 (C.D. Cal. Nov. 28, 2023) ................................................24

*Knowles v. Spin Master, Inc.*,
  2019 WL 4565102 (C.D. Cal. Sept. 17, 2019).............................................28, 32

*Lexar Homes, LLC v. Port*,
  2013 WL 3154166 (E.D. Wash. June 21, 2013) .............................................27

*Loomis v. Cornish*,
  2013 WL 6044345 (C.D. Cal. Nov. 13, 2013),
  *aff'd Loomis*, *supra*, 836 F.3d 991 ...............................................................26

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016)...............................................................20, 23, 24

Mitchell
Silberberg &
Knupp LLP

20505748.3

8

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

*M2 Software, Inc. v. Madacy Ent.,*
   421 F.3d 1073 (9th Cir. 2005).................................................................40

*Mandeville-Anthony v. Walt Disney Co.,*
   2012 WL 4017785 (C.D. Cal. July 28, 2012) .......................................28

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
   290 F. Supp. 2d 1083 (C.D. Cal. 2003)...............................................41

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.,*
   724 F.2d 357 (2d Cir. 1983) ...............................................................30

*Mattel, Inc. v. MGA Ent., Inc.,*
   616 F.3d 904 (9th Cir. 2010)..........................................................32, 33

*McGaughey v. Twentieth Century Fox Film Corp.,*
   12 F.3d 62 (5th Cir. 1994)..................................................................24

*Meta-Film Assocs., Inc. v. MCA, Inc.,*
   586 F.Supp. 1346 (C.D. Cal. 1984)...............................................24, 25

*Milano v. NBC Universal, Inc.,*
   584 F. Supp. 2d 1288 (C.D. Cal. 2008).............................................21

*Miller v. Glenn Miller Prods., Inc.,*
   454 F.3d 975 (9th Cir. 2006) ............................................................36

*Montz v. Pilgrim Films & Television, Inc.,*
   649 F.3d 975 (9th Cir. 2011) ............................................................20

*Moose Creek, Inc. v. Abercrombie & Fitch Co.,*
   331 F. Supp. 2d 1214 (C.D. Cal.),
   *aff'd,* 114 F. App'x 921 (9th Cir. 2004)........................................41, 42

*Murray v. CNBC,*
   86 F.3d 858 (9th Cir. 1996)...............................................................39

*Payne v. Anvil Knitwear, Inc.,*
   2007 WL 1953438 (C.D. Cal. June 27, 2007),
   *aff'd,* 293 F. App'x 475 (9th Cir. 2008)............................................24

Mitchell
Silberberg &
Knupp LLP

20505748.3

9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Phillies v. Harrison/Erickson*,
   2021 WL 5936523 (S.D.N.Y. Aug. 10, 2021) ...................................................22

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
   894 F.3d 1015 (9th Cir. 2018) ..........................................................................36

*Playmakers, LLC v. ESPN, Inc.*,
   297 F. Supp. 2d 1277 (W.D. Wash. 2003),
   *aff'd*, 376 F.3d 894 (9th Cir. 2004) ................................................................40

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
   327 F. App'x 723 (9th Cir. 2009)......................................................................39

*Radin v. Hunt*,
   2011 WL 13196323 (C.D. Cal. Dec. 15, 2011),
   *aff'd,* 499 F. App'x 684 (9th Cir. 2012) ..........................................................31

*Ramirez v. Navarro*,
   2023 WL 1806847 (C.D. Cal. Jan. 5, 2023),
   *aff'd*, 2024 WL 1874993 (9th Cir. Apr. 30, 2024) ...........................................36

*Rearden LLC v. Rearden Comm. Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ..........................................................................37

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ..........................................................................26

*Ronk v. Hudson*,
   2022 WL 3013214 (C.D. Cal. Feb. 23, 2022) ...................................................29

*Rosa v. Taser Int'l, Inc.*,
   684 F.3d 941 (9th Cir. 2012) ............................................................................19

*Satan Wears Suspenders, Inc. v. Jaar*,
   2022 WL 2181449 (S.D.N.Y. June 16, 2022) ...................................................37

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) .......................................................................27, 32

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
   143 F.Supp.3d 1026 (N.D. Cal. 2015)...............................................................37

Mitchell
Silberberg &
Knupp LLP

20505748.3

10

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020)........................................................32, 33

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ...............................................................31

*Soc. Techs. LLC v. Apple Inc.*,
  4 F.4th 811 (9th Cir. 2021)...................................................................38

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
  987 F. Supp. 2d 1023 (C.D. Cal. 2013).................................................42

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005).................................................................42

*Swatch, S.A. v. Beehive Wholesale, L.L.C.*,
  888 F. Supp. 2d 738 (E.D. Va. 2012),
  *aff'd*, 739 F.3d 150 (4th Cir. 2014) .....................................................39

*Tedesco v. Pepe*,
  2012 WL 13012419 (C.D. Cal. July 17, 2012) ....................................20

*Toho Co. v. Sears, Roebuck & Co.*,
  645 F.2d 788 (9th Cir. 1981) ................................................................37

*Walker v. Viacom Int'l, Inc.*,
  2008 WL 2050964 (N.D. Cal. May 13, 2008),
  *aff'd*, 362 F. App'x 858 (9th Cir. 2010) ..............................................22

*Walter v. Mattel, Inc.*,
  31 F. Supp. 2d 751 (C.D. Cal. 1998),
  *aff'd*, *supra*, 210 F.3d 1108 (9th Cir. 2000)........................................42

*Walter v. Mattel, Inc.*,
  210 F.3d 1108 (9th Cir. 2000)..............................................39, 40, 42

*Warner Bros. Ent. v. X One X Prods.*,
  644 F.3d 584 (8th Cir. 2011) ................................................................22

*Wongab Corp. v. Nordstrom, Inc.*,
  2017 WL 10439833 (C.D. Cal. Sept. 21, 2017)....................................31

Mitchell
Silberberg &
Knupp LLP

20505748.3

11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*World Champ Tech LLC v. Peloton Interactive, Inc.*,
  2024 WL 665181 (N.D. Cal. Feb. 16, 2024)....................................................40

### STATUTES

17 U.S.C.
  § 102(a)...........................................................................................................20

Cal. Code Civ. Proc.
  § 343 ...............................................................................................................34

### OTHER AUTHORITIES

3 McCarthy on Trademarks and Unfair Competition (5th ed.)
  § 23:10 ............................................................................................................42

Fed. R. Civ. P.
  56(a)................................................................................................................19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

20505748.3

## I.    INTRODUCTION

Plaintiffs[1] claim exclusive rights under copyright in a blue-eyed ukulele-playing turtle named Honu, which they claim Defendants copied by releasing 'Olu Mel, their own blue-eyed ukulele-playing turtle. For the reasons below, Plaintiffs' claims are subject to summary judgment.

*First,* the undisputed facts establish that Plaintiffs did not sketch Honu playing a ukulele until April 2016, *after Defendants already had created 'Olu Mel, in the fall of 2015.* Indeed, Plaintiffs concede the image of Honu playing a ukulele was not publicly available until on or about July 27, 2018, *after* 'Olu Mel's public debut on July 20, 2018. Defendants could not have copied something that did not exist. The Copyright Act does not protect ideas; it protects original expressions fixed in a tangible medium. Since Plaintiffs did not fix any depiction of Honu as a blue-eyed ukulele-playing turtle until *after* Defendants designed 'Olu Mel, Plaintiffs' copyright claim fails as a matter of law.

*Second,* as to any early versions of Honu without a ukulele that existed before Defendants created 'Olu Mel, Plaintiffs cannot establish that prior versions meet the three part test for character copyright protection set forth in *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015). Under *Towle,* Plaintiffs must show that these early versions (1) had both physical as well as conceptual qualities; (2) were sufficiently delineated to be recognizable as the same character whenever it appeared, displaying consistent, identifiable character traits and attributes; and, (3) were especially distinctive containing unique elements of expression. Early versions of Honu lacked any conceptual qualities or characteristics whatsoever, and were not particularly distinctive or unique.

*Third,* as to any version of Honu, Plaintiffs' copyright claim requires either a plausible theory of access prior to the creation of 'Olu Mel, or that Honu and 'Olu

---

[1] John William Kaipo Enos ("Enos") and Johnson Entertainment, LLC are referred to collectively as "Plaintiffs." The Walt Disney Company and Disney Enterprises, Inc. are referred to collectively as "Defendants" or "Disney."

Mitchell Silberberg & Knupp LLP
20505748.3

13

Mel are so strikingly similar the possibility of independent creation must be precluded. There is zero evidence linking anyone at Disney with whom Plaintiffs *may* have shared the idea of Honu to those individuals who created 'Olu Mel. As to striking similarity, Plaintiffs' own expert concedes it is possible that 'Olu Mel was created independently – and the undisputed evidence shows 'Olu Mel in fact was.

Plaintiffs' Lanham Act claim fails as well. It is clearly barred by laches – Plaintiffs waited far too long (more than 5 years after learning about 'Olu Mel) to assert their claim. While Plaintiffs claim much as a mark – *e.g.*, the generic Hawaiian word for music (mele), or vague turtle or flowers designs – they have no evidence of rights in those marks, or that they used those marks in a source-designating manner prior to Defendants' use of 'Olu Mel. As for the single registered trademark that predates 'Olu Mel – a composite mark consisting of a black-and-white image of Honu under the prominent phrase *Honu by the Sea* – it is entirely dissimilar to any mark associated with 'Olu Mel.

Simply put, neither the facts nor the law supports any theory of recovery here. Plaintiffs' claims should be dismissed in their entirety.

## II.    RELEVANT BACKGROUND FACTS

### A.    Plaintiffs' "Honu by the Sea"

Enos is a self-described composer, singer, and producer. Separate Statement of Undisputed Facts ("SUF") 1. Around 2006, Enos began writing songs that eventually evolved into a live theatrical show, titled *Honu by the Sea* ("the Show"). SUF 3. The initial version of the Show premiered on July 4, 2012 at the Royal Hawaiian Hotel. SUF 4. The storyline follows Kainoa, a teenage Hawaiian "surfer-beachboy, who finds a magical sea star that grants him a wish to spend a day under the sea." SUF 5.  It has environmental themes, and encourages children to protect the ocean. SUF 6. ***There is no character named Honu in the Show***. SUF 7, 9-10. Rather, "honu" is the Hawaiian word for "sea turtle," and the "Honu" reference in the title was to a female turtle character in the Show named Malia. SUF 8-9.

Plaintiffs also launched a website for the Show in 2012. SUF 11. That website displayed an illustrated image of Malia, but no images of Honu. SUF 12.

Plaintiffs created approximately four other iterations of the Show. In 2013, Plaintiffs created "The Imagine Show," which "kept the story intact from *Honu by the Sea*" but could be completed in 20 minutes. SUF 13-14. Plaintiffs performed the Imagine Show about 10 times. SUF 15. In 2015, Plaintiffs created another musical version of the Show, and performed that show once. SUF 16. At some point after 2018, Plaintiffs created yet another iteration of the Show titled "Rainbow of Colors," which was put on at the Outrigger Hotel. SUF 17.

These iterations incorporate different songs and are shorter or longer but all follow the same storyline. SUF 18. Generally, the shows were performed for free at educational venues such as the Smithsonian and the Seattle Aquarium. SUF 19. Significantly, ***none of the scripts for any iteration includes a story about or lines spoken by a character named Honu, or a ukulele playing turtle***. SUF 10, 20.

### 1.    Plaintiffs' Purported "Character" Honu

In November 2013, Michael Furuya, a Hawaiian artist, created the first visual depiction of Honu, at Plaintiffs' request. SUF 24. That first version depicted a green sea turtle with blue eyes and prominent eyelashes, with a brown and yellow shell with a flower pattern, standing with its arms upraised ("Standing Honu"). SUF 25. It did not include a ukulele. SUF 26.

Plaintiffs first publicly displayed Standing Honu around June 5, 2014, when Plaintiffs used this image on the program for a preview of the Show at the Royal Hawaiian Hotel. SUF 27. They used the image of Standing Honu in the program for four different shows in 2014. SUF 28.

In spring 2015, Plaintiffs debuted the Show's "new Honu character mascot," *i.e.*, a walk around character in a turtle costume (the "Honu Mascot"). SUF 29. The Honu Mascot did not speak, did not have a ukulele, and was made available to greet and take photos with children and their families. SUF 30-32. The Honu

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Mascot appeared at only *six* such performances in the United States. SUF 34.

On April 18, 2016, Mr. Furuya sent Enos a rough sketch of Honu holding a ukulele ("Ukulele Honu"). SUF 36. Plaintiffs have not identified any image of Honu with a ukulele prior to this sketch. SUF 37. It is undisputed that Plaintiffs did not publicly display Honu with a ukulele until on or about July 27, 2018. SUF 38 ("The first -- the first debut of Honu holding a ukulele is July 27, 2018."). On that date, Plaintiffs posted an image of Honu with a ukulele on Plaintiffs' website in connection with the announcement of Plaintiffs' "Honu Mele Series." SUF 39.

### 2. Plaintiffs' Limited Exploitation of Honu

Plaintiffs never generated significant revenue, or any profit, from any version of Honu or the Show. Generally, Plaintiffs did not sell tickets to the Show; instead, they were put on for educational purposes at schools and museums. SUF 19. In some instances, venues paid a small stipend while in others, Plaintiffs put on the show entirely for free. SUF 44-45.

Nor have Plaintiffs earned any appreciable revenue from merchandise sales. Plaintiffs claim Sanrio sold limited merchandise depicting Honu at their theme park in Japan in 2018 or 2019, but Plaintiffs did not charge a license fee or receive any revenue for those sales. SUF 42. In 2021 (three years *after* 'Olu Mel debuted and merchandise sales were launched at the Aulani Resort), Plaintiffs began selling Honu-branded ukuleles at a local Hawaii music store, earning about $19,557.43 in total revenue from the sales of ukuleles. SUF 46-48. In 2023, Plaintiffs earned approximately $145.73 from the sale of Honu t-shirts. SUF 49.

Costs far outweighed revenue. All told, Plaintiffs *lost* about $1 million since the Show first was produced in 2012. SUF 51.

### 3. Enos's Contacts with Individuals Associated with Disney

In their initial disclosures and discovery responses, Plaintiffs identified five individuals associated with Disney with whom he claims to have discussed the Show or Honu, prior to Disney's release of 'Olu Mel: Shelby Jiggots-Tivony,

Mitchell
Silberberg &
Knupp LLP
20505748.3

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  Steven Davidson, Marilyn Magness, Jason Milligan, and Bradley Kaye. SUF 58.

2  Enos contends Magness attended the Show in 2012, and he had discussions with

3  Magness, Milligan, and Kaye about potentially working with him in a personal

4  capacity (not through Disney) on a "Honu Musical project." SUF 62-64.

5  Ultimately, however, none of Magness, Milligan, or Kaye ever worked with Enos

6  on the Show. SUF 65.

7        When he was later deposed, Enos testified about three other Disney

8  employees with whom he claims to have discussed the concept of the Show *before*

9  it was created (this was also the case with Jiggetts-Tivony and Davidson): Steve

10  Skoria, John Dennis, and Matt Walker. SUF 59-60.[2] Enos does not recall sending

11  scripts of shows or images of characters to any of these individuals; his discussions

12  with them were only about the *idea* of the show, before it even existed. SUF 60-61.

13        Enos does not recall ever having sent an image of Honu holding a ukulele to

14  anyone associated with Disney prior to 2018. SUF 67. Enos testified that other than

15  these individuals, he did not speak with anyone else at Disney about *Honu by the*

16  *Sea*. SUF 68.

17        **B.    The Independent Creation of Defendants' Character, 'Olu Mel**

18        In or around 2004, Defendants released the character "Duffy," a teddy bear

19  made for Mickey Mouse. SUF 69. Following the success of Duffy, Defendants

20  released additional characters, which expanded into a full merchandise line, called

21  "Duffy and Friends." SUF 70. Each of Duffy's "Friends" has a specific talent or

22  trait – *e.g.*, ShellieMay (also a teddy bear, has an adventurous spirit), Gelatoni (an

23  artistic cat), and StellaLou (a rabbit that loves dancing). SUF 71.

24        In August of 2015, Disney's design group began developing a Duffy

25  "Friend" for Disney's Aulani Resort in Hawaii. SUF 72. In light of its connection

26  to Hawaii, it was decided the new character would be a turtle and musical in

27  _____

28  [2] Enos also testified that he worked with a former Disney employee, Brett Swain, in his personal capacity, but only *after* Swain was employed by Disney. SUF 66.

1   nature.[3] SUF 73.

2        Between August and September of 2015, Fabiola Garza, a character artist in

3   Disney's design group in Florida, sketched an early version of what would become

4   'Olu Mel holding a ukulele. SUF 75. By December 2015, 'Olu Mel had progressed

5   to color, with a dark green shell featuring a Mickey Mouse silhouette, and a light

6   green body with lighter green face. SUF 76. By February 2016, Garza had created

7   a digital image of 'Olu Mel as a green turtle with blue eyes, playing a ukulele. SUF

8   77. Thereafter, Garza made minor changes to 'Olu Mel to conform his look to

9   other Duffy and Friends characters, *e.g.*, making him more pastel, removing some

10  spots to give him a younger appearance, and making his eyes more "button-like,"

11  akin to a teddy bear. SUF 78. The outline on 'Olu Mel's face was changed to a

12  Mickey Mouse silhouette, mirroring the "hidden Mickey" on the other Duffy and

13  Friends characters. SUF 79. By August 2016, 'Olu Mel had evolved to his final

14  appearance. SUF 80. By January 2017, Garza had created images of 'Olu Mel in

15  many forms: playing the ukulele standing, playing the ukulele laying down in a

16  float, running with his ukulele, surfing, eating ice cream, and more. SUF 81.

17       On July 20, 2018, Defendants announced 'Olu Mel as "a kindhearted turtle

18  who plays the ukulele." SUF 88. And on July 27, 2018, 'Olu Mel was officially

19  released at Disney's Aulani Resort. SUF 89. He is a shy turtle, who uses his

20  ukulele to write songs about nature, adventure, and friendship. SUF 90. Since

21  2018, Defendants continue to invest in 'Olu Mel, including in designing and

22  releasing new products depicting 'Olu Mel, both alone and with other Duffy and

23  Friends characters. SUF 94-95.

24       **C.    The Litigation**

25       Plaintiffs allege that 'Olu Mel "happens to be a turtle with strikingly similar

26  features to Plaintiff's [sic] Honu" – *i..e.*, "bright blue eyes, similar spotting on the

---

[3] The character was initially named just 'Olu, but subsequently "Mel" – short for
melody – was added because of 'Olu Mel's musical nature. SUF 74.

Mitchell
Silberberg &
Knupp LLP
20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1    hands and feet, and plays the ukulele." Dkt. 18 ("FAC") ¶ 19. Based on these

2    allegations, Plaintiffs assert two claims arising from Defendants' exploitation of

3    'Olu Mel: (i) copyright infringement; and (2) unfair competition (violation of

4    Lanham Act).

5        In their FAC, Plaintiffs identify twelve U.S. copyright registrations (and one

6    Chinese registration) related to Honu or *Honu by the Sea*.  FAC ¶ 14. Plaintiffs do

7    not, however, allege that any particular copyrighted work covered by one of these

8    registrations has been infringed.[4] Rather, Plaintiffs allege that Defendants "copied

9    Honu as a composition[,]" *i.e.*, as a character. *Id.* ¶ 21. Plaintiffs also list multiple

10   trademark registrations, as well as multiple purported common law marks, and

11   assert a claim for violation of Section 43(a) of the Lanham Act based thereon.

12       **D.   Procedural History**

13       On December 12, 2023, Defendants moved to dismiss the FAC.  Dkt. 21.

14   On March 4, 2024, the Court denied Defendants' motion, finding that, assuming as

15   true all of the allegations in the FAC (many of which have now been disproved

16   during discovery), the blue eyes and ukulele present in both Honu and 'Olu Mel

17   potentially could give rise to a claim for relief.  Dkt. 34, at 11.

18   **III.  SUMMARY JUDGMENT STANDARD[5]**

19       Summary judgment should be granted "if the movant shows that there is no

20   genuine dispute as to any material fact and that the movant is entitled to judgment

21   as a matter of law." Fed. R. Civ. P. 56(a). The movant meets this burden by

22   showing an absence of evidence supporting an essential element of the non-

23   movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-

24   movant must then proffer *affirmative, admissible evidence* sufficient to defeat

25   summary judgment. *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 948 (9th Cir. 2012).

26

27   ───────────────────────

[4]  Three registrations (two scripts and a song) depict no character named "Honu." SUF 20, 97-99. The remaining registrations cover specific images of Honu. SUF 100-108.

28   [5]  Unless otherwise noted, all internal citations are omitted and emphasis is added.

Mitchell
Silberberg &
Knupp LLP
20505748.3

19

## IV.    PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM FAILS

To establish copyright infringement, Plaintiffs must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016). Here, the undisputed facts establish that ***Defendants*** created their blue-eyed, ukulele-playing turtle character ***first***, which means that "copying" was, in a word, impossible. Plaintiffs also cannot establish a copyrightable interest in any pre-existing version of Honu as a character, and nor can they proffer a theory of access, or establish that 'Olu Mel is strikingly or substantially similar to any prior depiction of Honu.

### A.    <u>Defendants' Prior Independent Creation Defeats Plaintiffs' Copyright Infringement Claim As A Matter Of Law</u>

Plaintiffs' FAC is clear. The "Honu" character Plaintiffs claim has been infringed is "a stylized bright green and yellow Hawaiian sea turtle with blue eyes who plays the ukulele," *i.e.*, Ukulele Honu. FAC ¶ 11. But whatever copyright Plaintiffs may have in Ukulele Honu, it cannot extend beyond what has been fixed in a tangible medium. 17 U.S.C. § 102(a); *see also Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) ("The scope of copyright subject matter does not extend to ideas that are not within a fixed medium.").

Here, Plaintiffs have no evidence of any ***fixed*** depiction of Ukulele Honu prior to the black-and-white outline sketch created in April 2016. SUF 36-37. Moreover, Plaintiffs concede they did not publicly display any image of a blue-eyed ukulele-playing turtle until July 2018. SUF 38. Defendants, however, began sketching their ukulele-playing turtle in ***2015***, and added blue eyes by at latest ***February 2016*** – months before Plaintiffs' ukulele-playing turtle even existed, and years before it was shown publicly. SUF 72-77.

"[A]s a matter of copyright law, it is well established that a prior-created work cannot infringe a later-created one." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002); *see also Tedesco v. Pepe*, 2012 WL 13012419, at *9 (C.D.

Cal. July 17, 2012) ("Where a defendant's work is created before a plaintiff's work, no infringement is possible."). While Plaintiffs may claim to have come up with the ***idea*** of a ukulele-playing turtle before 2016, "[c]opyright law does not protect ideas themselves, but rather the **expression** of those ideas." *See Milano v. NBC Universal, Inc.*, 584 F. Supp. 2d 1288, 1293–94 (C.D. Cal. 2008).

It is indisputable that Defendants' fixed image of a blue-eyed ukulele-playing turtle – the turtle now called 'Olu Mel, and the subject of this lawsuit – ***came first***. Thus, by necessity, Defendants must have created 'Olu Mel independently. This prior creation defeats Plaintiffs' copyright claim as to Ukulele Honu – the express basis of their claims against Defendants – as a matter of law. *See Christian*, 286 F.3d at 1128 ("By simple logic, it is impossible to *copy* something that does not exist.") (emphasis in original).

## B.  <u>Plaintiffs Have No Character Copyright In Standing Honu or the Honu Mascot</u>

Plaintiffs cannot salvage their copyright claim by relying on Honu as it existed before 2016, *i.e.*, Standing Honu and the Honu Mascot. Importantly, "[n]ot every comic book, television, or motion picture character is entitled to copyright protection." *Daniels v. Walt Disney Co.*, 958 F.3d 767, 771 (9th Cir. 2020) (quoting *Towle,* 802 F.3d at 1019). Rather, a character is entitled to copyright protection only if "(1) the character has 'physical as well as conceptual qualities,' (2) the character is 'sufficiently delineated to be recognizable as the same character whenever it appears' and 'display[s] consistent, identifiable character traits and attributes,' and (3) the character is 'especially distinctive' and 'contain[s] some unique elements of expression.'" *Id.* (quoting *Towle*, 802 F.3d at 1021). Here, none of these requirements if satisfied.

First, both Standing Honu and the Honu Mascot lack ***any*** conceptual qualities. Particularly prior to 2016, Honu's traits were purely physical, as reflected in a single image and in the design of a costume. SUF 20, 23-31. Honu was (and

21

1   still is) just a mascot – it has no storyline whatever, and no discernable traits

2   whatsoever, beyond being an anthropomorphized turtle. *Id.*; *see also Hoff v. Walt*

3   *Disney Pictures*, 2019 WL 6329368, at *3 (C.D. Cal. Aug. 19, 2019) ("the concept

4   of anthropomorphic animals – even anthropomorphic animals who fight crime – is

5   a high-level, basic plot idea not subject to copyright protection.").

6       Second, neither Standing Honu nor the Honu Mascot is sufficiently

7   delineated to be entitled to copyright protection. Prior to 2016, Standing Honu was

8   little more than a single image. SUF 24-28; *see Warner Bros. Ent. v. X One X*

9   *Prods.,* 644 F.3d 584, 600 (8th Cir. 2011) (no copyrighted character based on

10  movie poster that "by itself reveals no distinctive character or visual traits, but only

11  visual characteristics typical to cats and mice"); *Walker v. Viacom Int'l, Inc.,* 2008

12  WL 2050964, at *5–6 (N.D. Cal. May 13, 2008) (copyrighted cartoon consisting of

13  "four small and largely uninformative black and white panels" that conveyed "little

14  to no information about [the character's] personality or character traits" was

15  insufficient to establish copyright protection of the character), *aff'd*, 362 F. App'x

16  858 (9th Cir. 2010). Here, the Honu Mascot merely appeared at "meet and greets"

17  in connection with a handful of performances of the Show, but neither Standing

18  Honu nor the Honu Mascot was a character in the Show at any point. SUF 20, 30-

19  32; *see Phillies v. Harrison/Erickson*, 2021 WL 5936523, at *24 (S.D.N.Y. Aug.

20  10, 2021) (traits of sports team mascot such as "child-like enthusiasm" and "loves

21  to dance" "do not delineate a character of sufficient unique expression to warrant

22  copyright protectability").

23      Third, there is nothing "especially distinctive" or "unique" about Standing

24  Honu or Mascot Honu, the only versions of Honu that existed prior to the creation

25  of 'Olu Mel. Both Standing Honu and Mascot Honu are basic sea turtles with blue

26  eyes, a concept that can be seem in numerous pre-existing characters.  SUF 149-

27  51, 158-59.

28      In short, prior to the creation of 'Olu Mel, Honu lacked even the basic

characteristics necessary to support copyrightability as a character. Thus, any infringement claim by Plaintiffs must be premised on the limited depictions of Honu that existed prior to 2016. That infringement claim also fails.

### C.    Plaintiffs Cannot Establish Copying Of Any Depiction Of Honu

Where, as here, there is no "direct evidence of copying," Plaintiffs must show Defendants had access to Plaintiffs' work, or that the works at issue are "strikingly similar." *Loomis*, 836 F.3d at 994-95, n.1. Plaintiffs cannot establish either with respect to any depiction of Honu. Nor can Plaintiffs establish that any depiction of Honu that pre-dates 'Olu Mel is substantially similar to 'Olu Mel.

### 1.    Plaintiffs Cannot Establish Access To Any Version of Honu

On summary judgment, Defendants need only make a *prima facie* showing that the record is devoid of evidence supporting access. *Celotex*, 477 U.S. at 323. It is Plaintiffs' burden to present "'significant, affirmative and probative' evidence" supporting their claim of access. *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010), *aff'd* 438 F. App'x 587 (9th Cir. 2011). Plaintiffs "must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Loomis*, 836 F.3d at 995 (quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009)). Absent direct evidence of access, Plaintiffs must demonstrate either (1) "a chain of events linking the plaintiff's work and the defendant's access," or (2) "that the plaintiff's work has been widely disseminated." *Id*. Here, there is no evidence in support of any theory by which access could be inferred.

### a.    No Chain of Events Links Honu to the Creators of 'Olu Mel

Plaintiffs cannot establish a viable chain of events by which the creators of 'Olu Mel had access to *any* depiction of Honu prior to the creation of 'Olu Mel in, at latest, 2016. *See Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010) ("to logically support a claim that Defendant's copied

23

Mitchell
Silberberg &
Knupp LLP
20505748.3

1  Plaintiff's work, Defendant must have had access to Plaintiff's copyright work
2  *before* the creation of the allegedly infringing work.") (emphasis in original);
3  *Payne v. Anvil Knitwear, Inc.*, 2007 WL 1953438, at *3 (C.D. Cal. June 27, 2007)
4  ("[Defendant] did not have 'access' to Plaintiff's copyrights because [Defendant's
5  designs] were undisputedly created before Plaintiff's copyrights were fixed in a
6  tangible medium of expression."), *aff'd*, 293 F. App'x 475 (9th Cir. 2008).

7       Plaintiffs claim generally to have shared ideas related to the Show (in which
8  Honu is not even a character) with a small number of Disney employees, but have
9  no evidence indicating Plaintiffs shared any fixed depiction of **Honu**, let alone
10 what or when they shared that information. More importantly, Plaintiffs cannot
11 establish that ***any of the persons with whom Enos interacted had any role in the***
12 ***creation of 'Olu Mel.*** [6]

13      It is well-settled that "a plaintiff 'cannot create a triable issue of access
14 merely by showing "bare corporate receipt" of [his] work by an individual who
15 shares a common employer with the alleged copier.'" *Loomis*, 836 F.3d at 995; *see*
16 *also Bernal*, 788 F.Supp.2d at 1058 (receipt of work by individual who "worked in
17 the same office, for the same agency" and "on the same floor" as an individual
18 with creative input into defendant's work was insufficient to infer access); *Jones v.*
19 *Twentieth Century Studios, Inc.*, 2023 WL 9051282, at *9 (C.D. Cal. Nov. 28,
20 2023) (no access where "there is no evidence of communication or involvement"
21 between recipients and the creators of defendant's work); *McGaughey v. Twentieth*
22 *Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (no access where "the
23 persons involved with the writing of the original script and its rewrite did not have
24 knowledge of the [plaintiff] or his novel").

25      Therefore, Plaintiffs must demonstrate "a sufficient nexus between 'the

---

[6] Because Magness, Kaye, Milligan, and Grose acted in their personal capacity
when discussing the Show, rather than as Disney employees (SUF 64), any
submission to them "does not even rise to the level of bare corporate receipt" by
Defendants. *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1358, n.6
(C.D. Cal. 1984).

individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work.'" *Bernal*, 788 F.Supp.2d at 1056. This nexus can be found where the intermediary "(1) has supervisory responsibility for the allegedly infringing project, (2) contributed ideas and materials to it, or (3) worked in the same unit as the creators." *Id.* "[A]t minimum, the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access." *Meta-Film Assocs.*, 586 F.Supp. at 1358.

Here, nothing connects any individual with whom Plaintiffs interacted to any of the creators of 'Olu Mel – Fabiola Garza and the other members of her team. Garza has submitted affirmative and unrebutted evidence that no such nexus exists. Prior to this litigation, she had never seen or heard of Honu, the Show, or Plaintiffs. SUF 85-87. She has never met or spoken with any of the individuals with whom Enos claims to have discussed the Show, much less discussed with them any overlap in subject matter with their discussions with Enos. SUF 82-84. *See Batiste v. Lewis*, 976 F.3d 493, 504 (5th Cir. 2020) (no access where court "would have to assume that the defendants were lying" about never having heard of plaintiff or his work, and plaintiff offered no contradictory evidence).

There is no evidence that any individuals in communication with Enos had any supervisory responsibility for the creation of 'Olu Mel, or contributed any ideas to the design at all. SUF 82-84. Instead, the only reasonable inference from the record is that Garza "simply worked for the same company" with a small numbers of individuals with whom Plaintiffs may (or may not) have discussed Honu. *Bernal*, 788 F.Supp.2d at 1058. With these undisputed facts, there is no reasonable possibility that 'Olu Mel's creators had access to any version of Honu.

## 2. No Depiction Of Honu Was Widely Disseminated

As a general matter, "in order for a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available" in the market.

*Loomis v. Cornish*, 2013 WL 6044345, at *10 (C.D. Cal. Nov. 13, 2013), *aff'd Loomis*, *supra*, 836 F.3d 991. In other words, "the public dissemination necessary to infer that a defendant might have had access to the work is ***considerable***." *Id.*

Plaintiffs' evidence falls woefully short. Prior to the creation of 'Olu Mel in, at latest, 2016, Plaintiffs' use of Honu, in any form, was limited to its inclusion in programs for a handful of performances, as a mascot at six shows in the United States,[7] a single advertisement in Variety, and use on Plaintiffs' own website and social media pages. SUF 27-35, 52-55. Plaintiffs have no evidence of how many people received the programs, met the mascot, or viewed their website. SUF 35; *see Loomis*, 2013 WL 6044345, at *12 (no access where the plaintiff "ha[d] not produced any evidence, such as the scope, extent, attendance levels, locations, or number of performances"). And, the record shows ***no*** sales or distribution of any products depicting Honu prior to the debut of 'Olu Mel in July 2018. SUF 55. Plaintiffs' scant use of any depiction of Honu prior to the creation of 'Olu Mel falls far short of the standard for widespread dissemination. *Art Attacks Ink,* 581 F.3d at 1144-45 (design not widely disseminated where plaintiff sold 2,000 shirts a year, displayed the design at fair booths and kiosks, and posted the designs on the Internet); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (no widespread dissemination where plaintiff sold 17,000 videos).

### D.  <u>Plaintiffs Cannot Overcome The Lack Of Access Evidence By Claiming Striking Similarity</u>

"[I]n rare cases," copying can be proven without access if the works are "strikingly similar." *Gabl*e, 727 F. Supp. 2d at 823. But "[s]triking similarity is a high bar." *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1167 (N.D. Cal. 2014), *aff'd*, 714 F. App'x 712 (9th Cir. 2018). It requires "that, in human experience, it is ***virtually impossible*** that the two works could have been independently created."

---

[7] Plaintiffs claim Honu was also present at two shows in Japan in October 2016, but, by that time, the design of 'Olu Mel was essentially complete. SUF 80.

*Id.* Plaintiffs cannot pass that bar.

To start, undisputed facts establish that the blue-eyed ukulele-playing turtle that became 'Olu Mel *was* independently created, which itself undermines any claim of striking similarity as to that character. SUF 72-81; *Lexar Homes, LLC v. Port*, 2013 WL 3154166, at *5 (E.D. Wash. June 21, 2013) ("If an accused work was created independently, it does not infringe a copyrighted work, no matter how great the similarity between the two."). Moreover, none of the purported similarities identified by Plaintiffs' expert on similarity, Jon Weiman, rise to the level of striking similarity with respect to any depiction of Honu that existed prior to the creation of 'Olu Mel – *i.e.*, they do not reflect any "resemblance [that] can be explained only by 'copying rather than ... coincidence, independent creation, or prior common source.'" *Clover v. Tesfaye*, 2021 WL 4705512, at *1 (9th Cir. Oct. 8, 2021); *see also Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976) ("Evidence of similar musical phrases appearing in prior works ... demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great."). Each purported similarity identified by Weiman is discussed below.

**Elements From Nature**. Many of the purportedly similar elements identified by Weiman are traits found in turtles in nature. These include his claims that both turtles are "predominantly green" and "have spots on their appendages and heads." SUF 118, 127. Such natural traits of animals cannot support a claim for copyright infringement. *See Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("aspects of [] sculptures resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium" unprotectable); *Bliss Collection, LLC v. Latham Companies, LLC*, 2021 WL 5413796, at *5 (E.D. Ky. Mar. 16, 2021) ("the shape of a turtle's shell and color of its skin" are unprotectable stock elements), *aff'd*, 82 F.4th 499 (6th Cir. 2023). Yellow bellies are similarly prolific in nature and in animated depictions of turtles. SUF 121-22. Weiman at first claimed the

characters have a "relatively identical" color palette; however, at deposition he
conceded that was not true, given that (i) Honu and 'Olu Mel are ***different*** shades
of green and have different spotting (SUF 120, 129-30), (ii) "Honu is more
saturated than 'Olu Mel" (SUF124), (iii) 'Olu Mel's belly is "quite a different
yellow" than Honu's (SUF 123), (iv) Honu's shell is ochre and brown, whereas
Olu Mel's is "mustard yellow" or "green" (SUF 125), and (v) there are other
differences in color palette (SUF 126).

**Elements Derived From Hawaiian Association**. Weiman emphasizes
elements derived from the unprotectable idea that both characters are associated
with Hawaii. These elements – such as being depicted "on a beach surrounded by
Hawaiian foliage and flowers," or playing the ukulele – should not be considered
at all, as they were not included in any depiction of Honu (i.e., Standing Honu or
the Honu Mascot) that existed prior to the creation of 'Olu Mel. Regardless, no
copyright protection can "be afforded to elements of expression that necessarily
follow from an idea[.]" *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.
1988); *see also Knowles v. Spin Master, Inc.*, 2019 WL 4565102, at *6 (C.D. Cal.
Sept. 17, 2019) ("'[T]raits that flow naturally from the works' shared premises' do
not 'have significance under copyright law.'"); *Mandeville-Anthony v. Walt Disney
Co.*, 2012 WL 4017785, at *3 (C.D. Cal. July 28, 2012) (fact that "car characters
share attributes that flow from their make and country of origin" did not support
infringement claim). Beaches and a ukulele – an instrument Enos concedes is
associated with Hawaiian culture (SUF 137) – clearly flow from the shared
concept of connection to Hawaii. SUF 132-37. Moreover, Weiman admits these
purportedly similar elements are largely conceptual, and that the actual expressions
are quite different.[8] SUF 135-36, 155-56. And Disney has long been depicting

---

[8] Weiman emphasizes the placement of a starfish in two individual images.
Starfish, of course, also flow from the idea of a beach. Even in the specific images
Weiman compares, the starfish are placed differently and are different colors.
Moreover, there is no evidence that Plaintiffs obtained a copyright registration for

Mitchell
Silberberg &
Knupp LLP
20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1  animated characters in Hawaii, on beaches and with ukuleles. SUF 132, 138.

2  **Blue Eyes**. Weiman also claims both characters "have eyes that are blue in

3  the iris area with black pupils," but *admits* that Honu's eye shape is "absolutely

4  not" the same as 'Olu Mel's eye shape. SUF 148. While Honu and 'Olu Mel may

5  both share the *concept* of blue eyes, the *expression* of those blue eyes is quite

6  different. SUF 147; *see Ronk v. Hudson*, 2022 WL 3013214, at *9 (C.D. Cal. Feb.

7  23, 2022) ("Similarity of ideas … is insufficient to establish striking similarity, as a

8  matter of law."). Weiman concedes that Honu has white around his eyes, and 'Olu

9  Mel does not (SUF 152); Honu has eyelashes, 'Olu Mel does not (SUF 153); and

10 Honu's pupils are large, 'Olu Mel's are not (SUF 154). Nor is there any dispute

11 that blue eyes are ubiquitous with characters in children's entertainment. SUF 149-

12 51. Artists have depicted blue-eyed turtles for decades, from Tubby Turtle in 1959,

13 through Sammy from *A Turtle's Tale* in 2010, even including a green, blue-eyed

14 sea turtle with a yellow belly named "Baby Honu" that appeared in books by a

15 Hawaiian author with whom Enos was familiar. SUF 149-51, 158-59.

16 **Elements Derived From Children's Characters**. Other elements identified

17 by Weiman are derived from tropes in characters in children's entertainment. *See

18 Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright

19 protection may be afforded to the idea of producing stuffed dinosaur toys or to

20 elements of expression that necessarily follow from the idea of such dolls.

21 [Plaintiffs] therefore may place no reliance upon any similarity in expression

22 resulting from either the physiognomy of dinosaurs or from the nature of stuffed

23 animals."). Weiman claims the characters have the same head-to-body ratio, but

24 the idea of animated characters with relatively large heads compared to their

25 bodies is trite in children's entertainment. SUF 139. 'Olu Mel – a plush doll – has

26 largely the same head-to-body ratio as Duffy and others in the "Duffy and Friends"

27 ___

28 the images Weiman chose to analyze. SUF 97-108. Weiman conceded he did not know what was covered by Plaintiffs' copyright registrations. SUF 170.

family, which predates Honu by a decade. SUF 140. Weiman similarly emphasizes the characters' happy "demeanor," open-mouthed smile, and musical association. These concepts all have extensive histories in children's entertainment. *See* SUF 142-145; *see also Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (General ideas "remain forever the common property of artistic mankind.").

**Body Posture**. Weiman identifies certain elements present only in selected images of Honu and 'Olu Mel, none of which pre-date 'Olu Mel. He emphasizes the generic pose associated with playing a ukulele standing up – a posture that was not depicted by Plaintiffs prior to the creation of 'Olu Mel, and which Disney, and others, have used for decades (SUF 132, 138, 157). *See Columbia Pictures Indus., Inc. v. Embassy Pictures*, 1982 WL 1274, at *4 (C.D. Cal. May 27, 1982) ("prior art indicates that the pose of loving couples, even against a tropical background, is too common to constitute protectible expression."). Similarly common and unremarkable are an angled head (in a single image) or an open mouth (in some images but not others). SUF 142-144; *see Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) ("traditional fighting pose" unprotectable).

**Numerous Differences**. Just as important as what Weiman does consider, is what he ignores. At deposition, Weiman admitted to many differences between the parties' characters, such as their completely distinct shells. SUF 125. And he noted significant differences in the elements he claimed were similar, conceding that the characters' blue eyes were utterly dissimilar, and listing the numerous ways in which the characters' ukuleles were depicted differently. SUF 147-48, 155-56. ***Weiman even admitted that the characters were different types of turtles altogether, as Honu is a sea turtle with flippers while 'Olu Mel has digits and nails of a tortoise***. SUF 164. Nor did Weiman consider other differences. 'Olu Mel, for example, has a developed storyline that ties him into the Duffy and Friends family, and which reveals his traits as a shy turtle that likes to sing songs of love. SUF 88, 90, 166. Honu is simply a mascot, whose only musical trait is

occasionally holding a ukulele. *See Radin v. Hunt*, 2011 WL 13196323, at *3 (C.D. Cal. Dec. 15, 2011) ("substantial differences between the two works[] undercut[] any argument of striking similarity"), *aff'd*, 499 F. App'x 684 (9th Cir. 2012).

In short, the undisputed facts establish that every shared element between Honu and 'Olu Mel consists of unprotectable ideas that are neither novel nor unique, and are expressed quite differently. Numerous examples of pre-existing turtle characters show just how common and unoriginal these elements are, both individually and in combination. SUF 138, 149, 157-63. Even Weiman admits it **was** possible that 'Olu Mel was created independently. SUF 171. Plaintiffs cannot meet the high bar of raising a disputed issue of material fact as to striking similarity, or proving that 'Olu Mel could not have been independently created.

### E.    **'Olu Mel and Honu Are Not Substantially Similar**

As Plaintiffs have "not shown the required element of access by establishing a chain of events linking [Plaintiffs'] work and [Defendants'] access or striking similarity, the Court need not undergo an analysis of substantial similarity." *Wongab Corp. v. Nordstrom, Inc.*, 2017 WL 10439833, at *7 (C.D. Cal. Sept. 21, 2017). Regardless, for many of the same reasons they cannot establish striking similarity, Plaintiffs also cannot establish substantial similarity.

Substantial similarity has both an extrinsic and intrinsic component. On summary judgment, the Ninth Circuit considers only the extrinsic test; "*a 'plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment*, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests.'" *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). The extrinsic test is based on "external, objective criteria." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). "[A] court must filter out and disregard the non-protectible elements" and "take care to inquire only whether 'the ***protectible elements, standing alone***, are substantially similar.'" *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002).

Mitchell
Silberberg &
Knupp LLP
20505748.3

31

While Weiman purported to identify a number of similarities, he made no effort to filter out unprotectable elements. SUF 167-169; *see Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) ("substantial similarity between two works can't be based on similarities in unprotectible elements"); *Knowles*, 2019 WL 4565102, at *4 (C.D. Cal. Sept. 17, 2019) (finding unhelpful expert that did "not attempt to differentiate between protectable and unprotectable elements of the works."). Again, many elements allegedly shared by Honu and 'Olu Mel –green coloring, yellow bellies, spotting – are traits of turtles in nature and numerous pre-existing examples of cartoon turtles, and thus not protectable. *See supra*, IV.D.

Weiman also did not filter out other shared elements – a Hawaiian backdrop, a ukulele – that had not been depicted prior to the creation of 'Olu Mel, and which in any event flow naturally from the shared concepts of turtle characters associated with Hawaii, and thus are also unprotectable. *See id*. And still other purported similarities – a happy demeanor or a musical nature – are simply shared concepts or ideas, not protectable expression. *See id*. Even as to similarities like blue eyes, Weiman conceded the **expression** of those similarities was quite different. SUF 147-148; *see Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*, 398 F. Supp. 3d 494, 503 (D. Ariz. 2019) ("[Plaintiff's] copyright provides no protection to the *idea* of a duck float wearing sunglasses. Rather, [plaintiff's] copyright only protects the particular expression of that idea.").

Nor can Plaintiffs assert infringement of a protectable collection of otherwise unprotectable elements. Such a combination is protectable "only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811. A selection and arrangement cannot be "based on 'random similarities scattered throughout the works." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020). Rather, "only the '**new** combination' that is the '**novel** arrangement'" qualifies for protection. *Id*.

1  "[A] claim based on a selection and arrangement of unprotected elements requires
2  a plaintiff 'to explain how these elements are particularly selected and arranged,'
3  otherwise the claim 'amounts to nothing more than trying to copyright
4  commonplace elements.'" *Johannsongs-Publ'g Ltd. v. Lovland*, 2020 WL
5  2315805, at *7 (C.D. Cal. Apr. 3, 2020), *aff'd*, 2021 WL 5564626 (9th Cir. 2021).

6      Here, neither Plaintiffs nor their expert have articulated what particular
7  selection and arrangement – in other words, what particular expression of Honu as
8  a character – they believe (i) is protectable, (ii) existed prior to the creation of 'Olu
9  Mel, *and* (iii) has been copied by Defendants. Weiman, for example, purported to
10  analyze a handful of different images of Honu, but those images reflected different
11  combinations of elements – different in posture, different in the presence of a
12  ukulele, different in background. SUF 117. Weiman did not consider when any of
13  those images, and the particular combinations of elements depicted therein, were
14  created. SUF 167. Nor did Weiman consider whether any particular combination of
15  elements was "new" or "novel" – a notable omission given the undisputed prior
16  existence of many blue-eyed cartoon turtles. SUF 168-69.

17      The Ninth Circuit has emphasized that "a selection and arrangement
18  copyright is infringed only where the works share, in substantial amounts, the
19  'particular,' *i.e.*, the 'same,' combination of unprotectable elements." *Skidmore*,
20  952 F.3d at 1075. But, again, even Weiman admits to numerous differences in the
21  expression of particular elements between Honu and 'Olu Mel. SUF 120, 123-26,
22  129-31, 135-36, 146-48, 152-56, 164-65. These differences are especially
23  important here, as both Honu and 'Olu Mel are cartoon turtles that, in many
24  respects, *look like turtles*. As such, there is a "narrow range of expression,"
25  meaning that Honu "is entitled to only thin copyright protection against virtually
26  identical copying." *Mattel*, 616 F.3d at 915. In light of these conceded differences,
27  Honu and 'Olu Mel are certainly not "virtually identical," and Plaintiffs'
28  infringement claim must fail.

## V.     PLAINTIFFS' LANHAM ACT CLAIM FAILS

Plaintiffs' Lanham Act Claim fares no better. The claim is barred by laches, because Plaintiffs knew of Defendants' use of 'Olu Mel *five years* before filing suit, and have no reasonable excuse for their delay. Even if Plaintiffs could overcome laches (they cannot), they cannot establish prior use of any mark in which they have any protectable interest, with one exception: a United States trademark registration for "Honu by the Sea." Plaintiffs, however, cannot demonstrate any appreciable likelihood of confusion with respect to that mark.

### A.     Laches Bars Plaintiffs' Lanham Act Claim

Laches bars claims based on the concept that "one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Defendants must show: (1) Plaintiffs unreasonably delayed in filing suit; and, (2) the delay prejudiced Defendants. *Id.* at 838. Because Plaintiffs' delay was longer than the applicable limitations period, *Plaintiffs* bear the burden of overcoming the presumption of laches. *Id.*, at 837-38.

### 1.     Plaintiffs' Delay Was Unreasonable

Whether a delay was unreasonable considers (1) the length of delay measured from when Plaintiffs knew or should have known about their claim and (2) the reasonableness of delay, considering the analogous limitations period. *Jarrow*, 304 F.3d at 838. If the limitations period expired before filing suit, there is a "strong presumption" in favor of laches. *Id.* At *most*, the statute of limitations for Plaintiffs' Lanham Act claim is four years. Cal. Code Civ. Proc. § 343.

Here, Enos admits he was aware of 'Olu Mel "a couple of days before July 27, 2018[,]" when he was told 'Olu Mel was a green turtle, with blue eyes, that "looked like [] Honu." SUF 16. Yet Plaintiffs waited *five years* to file suit. Dkt 1.

Plaintiffs have no justification for their delay. When Enos learned about 'Olu Mel in 2018, he did not conduct *any* investigation into 'Olu Mel, Duffy and Friends, or Disney's plan for 'Olu Mel. SUF 93; *Grupo Gigante SA De CV v.*

Mitchell Silberberg & Knupp LLP

20505748.3

34

*Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004) ("Companies expecting judicial enforcement of their marks must conduct an *effective* policing effort."). Even a rudimentary investigation would have revealed that 'Olu Mel is a green turtle, with blue eyes and spots, who plays the ukulele: precisely the factors Plaintiffs relied on in initiating this lawsuit. SUF 92. There is no excuse for Plaintiffs' delay. *Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 990-91 (9th Cir. 2009) ("[a] prudent business person should [have] recognize[d] the likelihood of confusion to consumers under such circumstances").

In addition to the "strong presumption" of laches, Plaintiffs' delay is also unreasonable under *E–Systems, Inc. v. Monitek*, 720 F.2d 604, 607 (9th Cir. 1983).) Under *E-Systems*, courts analyze "(1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing [the] mark; (3) harm to [the] senior user if relief denied; (4) good faith ignorance by [the] junior user; (5) competition between [the] senior and junior users; and (6) [the] extent of harm suffered by junior user because of [the] senior user's delay." *Id.*

**First,** Plaintiffs' marks are conceptually and commercially weak.[9] The term "Honu" is generic (it translates to "turtle" in Hawaiian), and an image of a turtle is at best descriptive of the Show's content, which has a turtle character (Malia). SUF 7-9. Plaintiffs have no evidence of commercial success, have engaged in virtually no marketing, and any use of their purported marks prior to the release of 'Olu Mel in 2018 was minimal. SUF 41-46, 49-56; *Harman* 668 F. Supp. 3d at 1039 (considering "commercial success, extensive advertising, length of exclusive use, and public recognition."). **Second,** Plaintiffs knew of their potential claim by July 2018. Their failure to do anything for 5 years "falls short of the 'effective policing effort' the Ninth Circuit requires." *Harman*, 668 F.Supp.3d at 1042. **Third,** even

---

[9] A mark's strength is evaluated based on both its "inherent distinctiveness (i.e., its conceptual strength) and its recognition in the market (i.e., its commercial strength)." *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F.Supp.3d 1025, 1039 (C.D. Cal. 2023), *aff'd*, 2024 WL 4750497 (9th Cir. Nov. 12, 2024).

before 'Olu Mel, Plaintiffs had not earned *any* profits on Honu or the Show (SUF 41), and any "speculative harm they may suffer does not weigh against laches." *Ramirez v. Navarro*, 2023 WL 1806847, at *12 (C.D. Cal. Jan. 5, 2023), *aff'd*, 2024 WL 1874993 (9th Cir. Apr. 30, 2024); *see* SUF 56-57. **Fourth**, there is no evidence Defendants acted in bad faith or "sought to free-ride on [Plaintiffs'] good will[.]" *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1028 (9th Cir. 2018). **Fifth,** there is little competition here. 'Olu Mel products are sold through Disney points of sale. SUF 96. Plaintiffs, on the other hand, have sold "a relatively small number" of Honu-branded products through a local store in Hawaii (SUF 47), and used depictions of Honu predominantly "for promotional purposes," if at all (SUF 50). *Pinkette Clothing*, 894 F.3d at 1028. And **sixth,** Defendants have continued to build a business around 'Olu Mel while Plaintiffs sat on their purported rights, and thus have been prejudiced by Plaintiffs' delay. SUF 94-95.

## 2. Defendants' Suffered Prejudice Due To Plaintiffs' Delay

A defendant can show prejudice "by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed" (*Harman*, 668 F.Supp.3d at 1043-44), or by showing that during the delay "it invested money to expand its business or entered into business transactions based on his presumed rights" (*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006)). Evidence of a defendant's "continued investment in a line of products generating substantial sales is sufficient to demonstrate economic prejudice for purposes of laches." *Harman*, 668 F. Supp.3d at 1044; *see also* *Pinkette Clothing*, 894 F.3d at 1028 (prejudice found where defendant continued to build business, advertise, participate in trade shows, and expanded its warehouse).

Since the launch of 'Olu Mel in July 2018, Defendants have invested considerable creative resources, time, and expense to expand the 'Olu Mel brand, including creating additional artwork depicting 'Olu Mel in new poses and environments, and designing and manufacturing additional 'Olu Mel products.

1  SUF 94-95. Had Plaintiffs timely objected, Defendants could have altered course.

2  *Satan Wears Suspenders, Inc. v. Jaar*, 2022 WL 2181449, at *8 (S.D.N.Y. June 16,

3  2022) (prejudice where defendant "invested considerable energy" into brand).

4        **B.**      **Plaintiffs' Lanham Act Claim Fails on the Merits**

5        Even if Plaintiffs could overcome the presumption of laches (they cannot)

6  they have not established (1) the requisite priority of use of any protectable

7  trademark, or (2) any likelihood of confusion.[10]

8              **1.**      **Plaintiffs Cannot Establish Priority of Use**

9        "To acquire ownership of a trademark it is not enough to have invented the

10  mark first or even to have registered it first; the party claiming ownership must

11  have been the first to actually use the mark in the sale of goods or services."

12  *Rearden LLC v. Rearden Comm. Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012). As to

13  their registered marks, Plaintiffs are "granted a rebuttable presumption of

14  ownership dating back to the filing date of the ITU application for federal

15  registration." *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F.Supp.3d 1026,

16  1039 (N.D. Cal. 2015). Only one of Plaintiffs' registered marks preceded the

17  release of 'Olu Mel: a design mark for "Honu by the Sea," Registration No.

18  4,780,179 (the "Registered Mark").[11] SUF 110. Plaintiffs' other registered U.S.

19  marks identify a first use in commerce ***after*** 'Olu Mel was released on July 27,

20  2018. SUF 109-112. Plaintiffs do not have priority use of these marks.[12]

21        For each purported unregistered mark, Plaintiffs must establish protectable

22  rights ***and*** use in U.S. commerce prior to July 27, 2018. To establish common law

23  rights in an unregistered mark, a plaintiff must show either that its mark is

---

25  [10] The Lanham Act does not provide a general federal law of unfair competition; its

26  "protections extend to only two species of the generic tort of unfair competition: infringement of registered trademarks, and false designation of the origin of goods." *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 792 (9th Cir. 1981).

27  [11] Defendants do not contest ownership in this mark now, but reserve all rights.

28  [12] The Lanham Act does not apply extraterritorially; Plaintiffs' foreign marks are irrelevant. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 420 (2023).

Mitchell
Silberberg &
Knupp LLP
20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

inherently distinctive, or has acquired a secondary meaning. *Audio-Technica Corp. v. Music Tribe Com. My Sdn. Bhd.*, 2022 WL 1423223, at *7 (C.D. Cal. May 5, 2022). To show secondary meaning, Plaintiffs must demonstrate "buyers and potential buyers" recognize "products connected with the [mark] are associated with the same source." *Art Attacks Ink, LLC*, 581 F.3d at 1145 (9th Cir. 2009).

As to priority, Plaintiffs must demonstrate they used each mark, prior to July 2018, in a "sufficiently public [manner] to identify or distinguish the marked goods in an appropriate segment of the public mind." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817 (9th Cir. 2021). A mark "is not meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner." *Id.*

Plaintiffs identify three unregistered words, designs, symbols, and/or marks that form the basis for their Section 43(a) Lanham Act claim: (1) "Honu Turtle design and variations thereof," (2) the "[f]lower design, specifically the use on a ukulele," and (3) "the terms Mele, and Honu Mele Series." SUF 114.

**Honu Turtle Design.**  Plaintiffs contend their Lanham Act claim based on the "Honu turtle design and variations thereof" includes, "e.g., Honu waving, Honu sitting, Honu playing the ukulele." SUF 115. But, Plaintiffs have no evidence they used any image of Honu in a source-designating manner prior to July 27, 2018, other than the Registered Mark. Plaintiffs, for example, admit that Ukulele Honu was not used until after 'Olu Mel was announced. SUF 38.

**Flower Design.** According to Plaintiffs, the "flower design" refers to "the flower on the ukulele" that Honu plays.[13] SUF 116. It is undisputed that Plaintiffs did not publicize any image of Honu with a ukulele until July 28, 2018 (and even then, with no flower (SUF 40)), *after* 'Olu Mel was announced and released. SUF 38, 88-89. Nor did Plaintiffs sell any ukuleles until years later. SUF 46.

---

[13] Plaintiffs concede the flowers on 'Olu Mel's ukulele are not similar to the flowers on Honu's; their claim rests on the *idea* of ukuleles with flowers. SUF 155.

Mitchell Silberberg & Knupp LLP
20505748.3

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The terms "Mele" and "Honu Mele Series."** Plaintiffs' "Honu Mele Series" was released on July 27, 2018.[14] SUF 39. There is no evidence that Plaintiffs used either term before this release. In any event, there is no dispute that "mele" is a generic Hawaiian word for music, being used in Hawaii to describe a series of musical works (SUF 22-23), and is thus "unprotected by trademark right." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 327 F. App'x 723, 724 (9th Cir. 2009). Plaintiffs certainly cannot establish secondary meaning in the basic word "mele," in combination or alone.

## C.    Plaintiffs Cannot Establish Likelihood of Consumer Confusion

For Plaintiffs to overcome summary judgment as to the Registered Mark, they must also "prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion." *Murray v. CNBC*, 86 F.3d 858, 860 (9th Cir. 1996); *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) ("The test for false designation under the Lanham Act … is whether there was a 'likelihood of confusion'"). Likelihood of confusion considers "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Echo Drain v. Newsted,* 307 F. Supp. 2d 1116, 1123 (C.D. Cal. 2003). Courts consider eight factors: (1) strength of the mark; (2) proximity of goods; (3) similarity of the marks; (4) actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) intent; and (8) likelihood of expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). All weigh against a likelihood of confusion here.

**Strength of the Mark.**  In a reverse confusion case, "the inquiry focuses on

---

[14] Plaintiffs also registered the term "Mele Series" as a trademark, listing February 16, 2021 as the first use. But "Mele Series" is not similar to any mark allegedly used by Defendants. "'Olu Mel" and "Mele Series" have nothing in common, other than three shared letters with completely different placements, pronunciations, and context. *See Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 750 (E.D. Va. 2012) ("some similarity in sound when the marks are not fully pronounced is insufficient to establish similarity given the differences in sight and meaning"), *aff'd*, 739 F.3d 150 (4th Cir. 2014).

Mitchell Silberberg & Knupp LLP
20505748.3

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   the strength of the junior mark because the issue is whether the junior mark is so

2   strong as to overtake the senior mark." *Walter*, 210 F.3d at 1111 n.2. There is no

3   evidence that Defendants extensively advertised or marketed 'Olu Mel throughout

4   the United States, which makes sense given that it was created primarily for the

5   Aulani Resort. SUF 72, 96; *see Edge Wireless, LLC v. U.S. Cellular Corp.*, 2004

6   WL 1661992, at *17 (D. Or. July 23, 2004) (rejecting reverse confusion theory

7   where "plaintiff presents no evidence that defendant will 'saturate' the market").

8   Additionally, even in a reverse confusion case, the senior user's mark must have

9   *some* degree of strength to support an infringement claim. *See World Champ Tech*

10  *LLC v. Peloton Interactive, Inc.,* 2024 WL 665181, at *15 (N.D. Cal. Feb. 16,

11  2024) ("[I]f there is so little to overtake, reverse confusion must be unlikely.").

12  Plaintiffs have no evidence their mark held any strength, or even that they used the

13  Registered Mark much at all. SUF 27-28, 41, 50-56. And turtle characters are

14  ubiquitous in children's entertainment, further undermining the strength of the

15  Registered Mark. *JL Beverage Co., LLC v. Beam, Inc.,* 899 F. Supp. 2d 991, 1000

16  (D. Nev. 2012) ("'even an arbitrary mark may be classified as weak where there

17  has been extensive third party use of similar marks on similar goods.'").

18       **Similarity of the Marks.** "The similarity of marks 'has always been

19  considered a critical question in the likelihood-of-confusion analysis.'" *M2*

20  *Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1082 (9th Cir. 2005). "[W]hat is

21  critical is the overall appearance of the marks *as used in the marketplace*, not a

22  deconstructionist view of the different components of the marks." *Playmakers,*

23  *LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376

24  F.3d 894 (9th Cir. 2004) (emphasis added). Here, the Registered Mark contains a

25  black-and-white image of Honu standing with one arm raised, below the prominent

26  text "HONU by the sea" with bubbles. SUF 110. Plaintiffs have not identified any

27  use by Defendants of an image of 'Olu Mel, standing in a similar manner, under

28  any phrase remotely akin to "HONU by the sea." 'Olu Mel is typically depicted

Silberberg &
Knupp LLP
20505748.3

40

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Case 2:23-cv-05790-DSF-AGR    Document 59    Filed 02/14/25    Page 41 of 44    Page ID
#:526

1  with his name, and phrases such as "A Disney Friend of Duffy" or "Duffy and

2  Friends" (SUF 96), greatly differentiating it from the Registered Mark.

3        In truth, 'Olu Mel is no more similar to the black-and-white image included

4  in the Registered Mark, than the Registered Mark is to any of the numerous pre-

5  existing turtle characters in the arena of children's entertainment. *See Moose*

6  *Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1227 (C.D. Cal.),

7  *aff'd,* 114 F. App'x 921 (9th Cir. 2004) (despite moose logo being "similar in

8  appearance to the picture of the moose contained in some of [Plaintiffs'] composite

9  marks," marks found to be "very dissimilar" because "Plaintiffs' composite marks

10 prominently feature the words 'Moose Creek.'").

11       **Proximity of Goods.** There is little evidence that Plaintiffs have used the

12 Registered Mark in connection with U.S. sales of products also sold by Defendants

13 in connection with 'Olu Mel. Plaintiffs and Defendants both may sell ukuleles, but

14 Plaintiffs did not do so until 2021 or 2022, years after 'Olu Mel debuted. SUF 46,

15 89. Regardless, "[t]he mere fact that two products or services fall within the same

16 general field . . . does not mean that the two products or services are sufficiently

17 similar to create a likelihood of confusion." *Matrix Motor Co. v. Toyota Jidosha*

18 *Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003).

19       **Marketing and Distribution Channels.** Other than placing an

20 advertisement or two in Variety magazine, there is no evidence that Plaintiffs

21 marketed Honu by the Sea. SUF 52-54; *see Helix Env't Plan., Inc. v. Helix Env't &*

22 *Strategic Sols.*, 2020 WL 2556341, at *6 (S.D. Cal. May 20, 2020) (factor favored

23 defendants where one party did "very little marketing," instead "advertising

24 primarily through word-of-mouth"). Given the limited distribution of both

25 products, there is no overlap in distribution channels. *See Aliign Activation Wear,*

26 *LLC v. Lululemon Athletica Canada, Inc.*, 2022 WL 3210698, at *1 (9th Cir. Aug.

27 9, 2022) ("The near absence of any overlap in marketing or distribution channels

28 weighs heavily" against a reverse confusion finding.).

Mitchell
Silberberg &
Knupp LLP
20505748.3

41

**Purchaser Sophistication.** "In a reverse confusion case, the degree of care exercised by customers is determined with reference to the alleged senior user's customers only." *Abercrombie*, 486 F.3d at 634 n.2. The majority of Plaintiffs' (modest) revenue came from commercial sources, *i.e.*, stipends for putting on shows (SUF 45), and "[i]t is assumed that such professional buyers are less likely to be confused than the ordinary consumer." *Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 761 (C.D. Cal. 1998), *aff'd*, *supra*, 210 F.3d 1108 (9th Cir. 2000).

**Actual Confusion.** In a reverse confusion case, the relevant inquiry is whether a consumer mistakenly purchased a Honu product, believing Defendants to be the source, typically established by survey. 3 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed.). Plaintiffs lack *any* survey evidence of confusion, or any other admissible evidence of consumers believing Honu to be a Disney product. *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1054 (C.D. Cal. 2013) (lack of survey evidence "warrants a presumption that the results would have been unfavorable.").

**Intent.** There is zero evidence that Defendants acted in bad faith. *See Walter*, 210 F.3d at 1111 (affirming rejection of argument that because some employees who had never worked on the relevant project had met plaintiff, such knowledge should be imputed to the company to show ill intent).

**Expansion.** Despite Plaintiffs' "expressed interest in expanding [their] product line, mere speculation is not evidence." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). This "complete inability to adduce any concrete evidence of expansion plans tilts this factor in favor of" Defendants. *Id.*

Based on the undisputed facts, each *Sleekcraft* factor supports a finding of no consumer confusion warranting summary judgment in Defendants' favor.

# VI. CONCLUSION

For the foregoing reasons, Defendants' motion should be granted, and Plaintiffs' claims dismissed in their entirety.

1    DATED: February 14, 2025              MITCHELL SILBERBERG & KNUPP LLP

2                                           By:  /s/ Lucia E. Coyoca

3                                               Lucia E. Coyoca
                                                Attorneys for Defendants
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants The Walt Disney Company, and Disney Enterprises, Inc., certifies that this memorandum of points and authorities consists of 30 pages, which:

☐ complies with the word limit of L.R. 11-6.1.

☒ complies with the page limit set by court order dated February 10, 2025.

Dated: February 14, 2025         /s/ Lucia E. Coyoca
                                  Lucia E. Coyoca