AARONSON & AARONSON
ARTHUR AARONSON, SBN 64988
16133 Ventura Boulevard, Suite 675
Encino, California 91436
Phone: (818) 783-3858
Fax: (818) 783-3825

Attorney for Plaintiff,
JOHN WILLIAM KAIPO ENOS
& JOHNSON ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAM KAIPO ENOS, an individual and JOHNSON ENTERTAINMENT, LLC, a Native Hawaii limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-05790-DSF-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  April 7, 2025<br>Time:  1:30 p.m.<br>Courtroom: 7D (First Street   Courthouse)<br><br>Complaint Filed:  July 18,2023<br>Complaint Served: July 25, 2023<br>FAC Filed: November 22, 2023<br>Trial Date: July 29, 2025 |

- 1 -
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS...........................................2

TABLE OF AUTHORITIES........................................3

I.    INTRODUCTION..........................................7

  A. GENUINE ISSUES OF FACT EXIST AS TO DISNEY'S LIABILITY FOR COPYRIGHT INFRINGEMENT AND LANHAM ACT VIOLATION.......... 7

  B. THE TRUE CHRONOLOGY AND CREDIBILITY OF DISNEY'S WITNESSES .9

    1. The Release of 'Olu Mel...............................9

    2. Fabiola Garza As The "Creator" of 'Olu Mel.............11

    3. No Declarations from Any Other Members of the 'Olu team.13

    4. Seiter's Erroneous Report............................13

    5. Daniel Jue's Inconsistent Declaration.................14

    6. Hawaiian Sea Turtle Magically Turns into Hawaiian "Land Turtle" After This Case Was Filed.....................15

II.   LEGAL AUTHORITIES AND ARGUMENT ......................17

Standard of Review on a Motion for Summary Judgment...........17

  A. Copyright Infringement Claim...........................18

    Ownership of a Valid Copyright...... ..................18

    Copyright in a Character....... ......................18

    Access........ ....... ...............................20

    Substantial Similarity... ............................26

    Independent Creation..... ...........................28

B.    Lanham Act Section 43 Claim...........................29

    Liability............................................29

    Laches Defense.......................................35

III. CONCLUSION............................................36

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

AMF Inc v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)35

4

Allen v. Destiny's Child, 2009 U.S. Dist. LEXIS 63001, 2009 WL 2178676, at *5-7 (N.D. Ill. July 21, 2009)

5

...............................................................22

6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

7

...............................................................18

8

Angry Chickz, Inc. v. Bosphorus Trade, Inc. 2024 U.S. Dist. LEXIS

9

144348.........................................................32

10

Baxter v. MCA, Inc., 812 F.2d 421(9th Cir 1986). ........29

11

Bernal v. Paradigm Talent and Literary Agency, 788 F.Supp.2d (C.D, Cal 2010) .... ........................24

12

13

Cavalier v. Random House, Inc.,297 F.3d 815, 822 (9th Cir.2002). ...... .......................................18

14

Coquico, Inc. v. Rodriguez-Moranda, 562 F.3d 62, 67 (1st Cir 2009)…......................................23, 26

15

16

Daniels v. Walt Disney Co., 958 F.3d 767, 771 (9th Cir. 2020) .. ...............................................20

17

DC Comics v. Towle, 802 F.3d 1012, 1021 (9th Cir. 2015).

18

...............................................................20

19

Duncan McIntosh Co. v. Newport Dunes Marina LLC, 324 F. Supp. 2d 1078 (C.D. Cal. 2004), aff'd, 120 Fed. Appx. 119, 2005 U.S. App. LEXIS 730 (9th Cir. 2005). .... .........31

20

21

E Systems, Inc. v. Monitek, 720 F.2d 604 (9th Cir. 1983) ..

22

...............................................................36

23

Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,499 U.S. 340, 361, (1991). . ...............................................18

24

Feldman v. Twentieth Century Fox Film Corp., 723 F. Supp. 2d 357, 365 (D. Mass. 2010)

25

...............................................................24

26

Francescatti v. Germanotta, 2014 U.S. Dist. LEXIS 81794, at *11-21 (N.D. Ill. June 17, 2014)

27

...............................................................22

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Fun v. Leapfrog Enters. 2010 U.S. Dist. Lexis 146641... 23

Furnace v. Sullivan, 705 F.3d 1021, 1026 (9th Cir. 2013)17

GoTo.Com, Inc. v. Walt Disney Co., 202 F.3d 1199 (9th Cir Cal 2000)..............................................36

Gable v. Nat'l Broad. Co., 727 F.Supp.2d 815, 824-29 (C.D. Cal. 2010); ..........................................22

Gregorini v. Apple Inc., 2024 U.S. Dist. LEXIS 214480 ...... .........................................29

Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996) ..............................................23

Grupo Gigante SA De CV v. Dallo & Co., 391 F.3d1088 (9th Cir. 2004) ..........................................36

Hall v. Swift, 2021 U.S. Dist. LEXIS 245750, 2021 WL 6104160, at *5 (C.D. Cal. Dec. 9, 2021) ...............28

Ideal Toy Corp. v. Fab-Lu Ltd., 261 F.Supp. 238, 241-42 (S.D.N.Y.1966), aff'd, 360 F.2d 1021 (2 Cir. 1966) .....27

Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., 559 F.3d 985(9th Cir. 2009) ...........................36

Jarrow v. Formulas, Inc. v. Nutrition Now, 304 F.3d829 (9th Cir. 2002) ..........................................36

Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005) ............................................19,21

Jones v. Blige, 568 F.3d 485 (6th Cir. 2009)............25

L.A. Printex Indus. v. Aeropostale, Inc., 676 F.3d 841, 848 (9th Cir. 2012). ..............................18,22

Lewert v. Boiron, Inc., 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016), aff'd, 742 F. App'x 282 (9th Cir. 2018). ..............................................28

Loomis v. Cornish, 836 F.3d (9th Cir 2016) ..........23,24

Luna Distrib. LLC v. Stoli Grp. United States, LLC 2018 U.S. Dist. LEXIS 233024...............................32

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

-4-

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

*Mattel, Inc. v. MCA Records, Inc.*, 1998 U.S. Dist. Lexis 7310, 46 U.S.P.Q. 2D (BNA) 1407, 1444 (1998). ..........33

*Meta-Film Assoc., Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1355-56 (C.D. Cal. 1984) ..........................22,25

*Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663(2014) ....36

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC,*, 580 U.S. 328 (2017) ...................36

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corporation*, 562 F.2d 1157, 1166 (9th Cir 1977) ... .........................................27

*Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1171 (C.D. Cal. 2016). ...................................18

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 49 (1st Cir. 2012) ..............21

*Stewart v. Wachowski*, 574 F.Supp.2d 1074, 1088-89 (C.D. Cal. 2005.. ........................................22

*Straughter v. Raymond*, 2011 U.S. Dist. LEXIS 93068, 2011 WL 3651350, at *11 (C.D. Cal. Aug. 19, 2011) .......... 22

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482, 484-85 (9th Cir. 2000) ...................................22

*Tolan v. Cotton*, 572 U.S. 650, 660 (2014)..............18

*T.W. Elec. Serv., Inc. V. Pacific Electric Contr.*, 809 F.2d 629, 630 (USDC Central Dist Cal. 2005)............28

*United States v. Diebold, Inc.*, 369 U. S. 654.655 (1962) .. .......................................18

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000). .............................................31

*Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018)...17

*Wilson v. Walt Disney Co.,* 123 F.Supp.3d 1172, 1173-74 (N.D. Cal 2016) ...................................21,22

*Woodall v. Walt Disney Co.*, 2024 U.S. Dist. LEXIS 219909. ..................................................28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1

<u>Yankee Candle Co. v. Bridgewater Candle Co</u>., 259 F.3d 25,
33 (1st Cir. 2001) ...................................21

2

<u>Statutes</u>

3

4

17 U.S.C. §410(c) ...................................20

5

Lanham Act §43(a) ................................29,31

6

<u>Other Authorities</u>

7

4 *Nimmer on Copyright* § 13.02....................22,24,26

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION

A.    GENUINE ISSUES OF FACT EXIST AS TO DISNEY'S LIABILITY
FOR COPYRIGHT INFRINGEMENT AND LANHAM ACT
VIOLATION

Disney's Motion asks the Court to take this case away from the jury on both
the copyright infringement and Lanham Act claims based on Disney's assertion that
no reasonable person could interpret the evidence any other way than Disney does.

Nothing has changed since this Court denied Disney's Motion to Dismiss
other than Disney's convoluted interpretation of the facts and chronology of events
relevant to the claims at issue.

Disney's motion is based solely on its assertion that discovery revealed that
(1) Disney's artist never saw the musical blue-eyed Hawaiian sea turtle Honu
holding a ukulele and therefore her rendering of 'Olu holding a ukulele (an element
that Disney calls an unprotectable "scène à faire") could not have been copied, and
(2) Honu is not protectable as a character because Honu did not have speaking lines
in Plaintiffs' musical shows, while acknowledging that the Honu character appeared
live on stage at the shows and interacted with the audience and Honu was
prominently featured in the promotion of and information about the shows.

Contrary to Disney's arguments, (1) 'Olu Mel is substantially similar to the
musical Honu without the ukulele and (2) this court has already concluded in its

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

- 7 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Order Denying Motion to Dismiss that Honu is a character without any evidence that Honu had speaking lines in any of Plaintiffs' shows.

In addition, the evidence that Disney presents in support of the Motion is not only subject to interpretation and dispute, but is inconsistent, non-credible and controverted by Disney's own evidence as well Plaintiffs' evidence.

The unavoidable conclusion is that factual determinations are required on the issue of Disney's liability on both claims and those determinations are the province of the jury.

As to the copyright claim, there are genuine issues of fact as to (1) whether Disney had access, i.e., a reasonable possibility that Disney had an opportunity to view or copy Plaintiffs' proprietary works, (2) whether the works are substantially similar (the parties' respective experts disagree – (SGD 244 and 252) and (3) whether Disney's claimed independent creation of certain images insulates Disney from liability from Plaintiffs' copyright claims.

As to the Lanham Act claim, there are genuine issues of fact as to whether Disney used a combination of words, terms, names, symbols, or devices, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Disney with Plaintiffs, or as to the origin, sponsorship, or approval of Disney's goods, services, or commercial activities by another person, or  in commercial advertising or

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

promotion, misrepresents the nature, characteristics, qualities, or geographic origin

of Disney's goods, services, or commercial activities.

Finally, there are genuine issues of fact as to the credibility and reliability of

Disney's evidence.

As will be shown, Disney has engaged in numerous instances of false or

misleading activities related to its 'Olu Mel business enterprise and has made many

false or misleading statements in the Declarations filed in support of this Motion.

B. <u>THE TRUE CHRONOLOGY AND CREDIBILITY OF DISNEY'S
   WITNESSES</u>

Disney's entire defense in this case stresses and depends on the chronology of

relevant events and yet Disney plays fast and loose with the chronology, with

evidence which is incomplete, undependable and misrepresents the true facts.

1. <u>THE RELEASE OF 'OLU MEL</u>

Disney's timeline of relevant events is set forth in the Appendix attached to

the Declaration of Bradley Mullins and contains two gigantic and very relevant

falsehoods:

1. July 20, 2018 Disney announces debut of 'Olu Mel (SUF 88)

2. July 27, 2018 'Olu Mel products released at Disney's Aulani Resort (SUF
   89)

These statements are categorically false.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Disney's own evidence, the Declaration of Daniel Jue in paragraph 9, states:

"When first released, 'Olu Mel was called just "'Olu." In December of

2018, Disney decided to expand the name to 'Olu Mel, with the "Mel"

being short for "melody," in light of 'Olu Mel's musical nature. Disney

announced the name change on January 1, 2020." (SGD 74, 88, 89, 254)

The truth is that in July 2018 Disney announced the debut of 'Olu and

released 'Olu products and then changed 'Olu's name to 'Olu Mel after Plaintiffs

had announced their "Honu Mele" series of entertainment and products.  (SGD 254,

39, 107, 109, 111, 224, 225)

There was no 'Olu Mel until sometime in Spring 2020. (SGD 74, 88, 89, 254)

To further perpetuate this falsehood, in 2022, Disney filed five trademark

applications with the USPTO claiming that their 'Olu Mel specimens (produced

after the name change in 2020) which were submitted with their applications were

used in commerce as early as June 2018. (SGD 237). One could understand that

Disney's trademark counsel might have made an innocent mistake if she filed one

such erroneous application, but filing five of them certainly indicates something

more nefarious.

One can only speculate as to why Disney has continually misrepresented

these "facts", but this certainly tarnishes Disney's credibility as to all its evidence

submitted in support of this Motion.  One could conclude that Disney knew that

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

"Honu Mele" preceded "'Olu Mel" and was trying to create a public record that 'Olu Mel existed before Honu Mele.

## 2. FABIOLA GARZA AS THE "CREATOR" OF 'OLU MEL

Disney claims that Fabiola Garza, a newly hired a low-level graphic artist, is the creator of 'Olu Mel and had no access to Honu.  The truth is that Disney had a team of more than 20 people in different Disney offices assigned to the task of creating the new friend of Duffy for the Aulani (at the request of Oriental Land Company). (SGD 241).  As evidenced by the Declaration of Bradley Grose, Disney does not leave the decision of the design of a major new character for merchandising to an artist who has never designed a character before (SGD 266). Disney has a rigorous hierarchy of approvals and clearances that must be satisfied before investing millions of dollars in a new venture such as this. (SGD 266)

Furthermore, Disney's timeline on Fabiola Garza's work on the 'Olu project is suspect, at best.

The decision to make the character a native Hawaiian sea turtle was not made until September 9, 2015 at the earliest (SGD 255), and at that time the design of the character looked nothing like the final design of 'Olu. (SGD 256) There was no discussion that the character would be a turtle until that point.  Disney was considering several other animals which did not include a turtle.  (SGD 257)

- 11 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Disney claims that Fabiola Garza created images of 'Olu Mel long before Disney even had decided that the character would be a native Hawaiian sea turtle. (SGD 77 254, 255, 256, 257) There is no way Garza would have been tasked with creating images of a turtle, let alone "'Olu Mel" in 2015 long before the ultimate 'Olu character was created and finally released in July 2018.  Furthermore, the image she says she created in December 2015 looks nothing like the final 'Olu Mel character. (SGD 77 254, 255, 256, 257).

Garza's Declaration betrays her lack of credibility.  Not only is she vague on actual dates, but she claims she made some sketches of a turtle on her day planner, but there is no corroborating evidence of when those sketches were actually done or whether they had anything to do with the 'Olu character.  The pages of her day planner have no time stamp nor has Disney produced the complete day planner to determine whether this was her 2015 day planner or perhaps a later one that did not exist in 2015.   None of the Exhibits to Garza's Declaration provide any corroborating evidence of when the images were created except perhaps Exhibit 8, which may have been attached to an email dated June 3, 2016.

In addition, her story of how Disney created this character is not consistent with normal Disney practices, as described in the Declaration of Bradley Grose. (SGD 265, 266)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

She does admit that several other artists created images of the new character, including Ron Cohee and Maria Stuckey.  Ron Cohee's and Maria Stuckey's were presented before Garza created her images since she said reviewed them before creating hers, so Garza could not have created her images until at least April 2016. (SGD 275-278) In fact, Garza was not even included in the project team's emails until April 2016.  (SGD 278)

Garza states in her Declaration (SGD 77) "From there, I moved the drawing into Photoshop, to create a more polished, cartoon-style character. By February of 2016, I had created the following images of 'Olu Mel, the blue-eyed turtle, surfing and playing the ukulele."  However, there is no explanation of how or why the turtle that looked nothing like 'Olu morphed into a drastically different image, which now began to look much more like Honu. (SGD 275)

### 3. NO DECLARATIONS FROM ANY OTHER MEMBERS OF THE 'OLU TEAM

Garza's Declaration is not supported by any of the other numerous Disney employees who worked on the creation of 'Olu Mel.  Nor has Disney rebutted any of Plaintiffs' assertions that certain Disney employees were very well aware of and had seen Honu long before Garza picked up her sketch pad. (SGF 191, 192, 210, 222, 199, 177)

### 4. SEITER'S ERRONEOUS REPORT

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Disney's expert, Ellen Seiter, also flubbed the timeline dates in her report. Her report stated that the image of 'Olu on page 7 of her report was created in March 2016.  At her deposition, she admitted she made a mistake and that the image was created in June 2016, stating that the chronology was not important. (SGD 245)

### 5.  DANIEL JUE'S INCONSISTENT DECLARATION

Daniel Jue's Declaration in support of this Motion again shows the inconsistency in Disney's story and the contradictions in it.

"8.    Disney announced 'Olu Mel on July 20, 2018.  He was officially released on July 27, 2018 at Disney's Aulani Resort.  At that time, Disney had created and released for sale about 18 different products depicting 'Olu Mel, either alone or with other Duffy and Friends characters.

9.    When first released, 'Olu Mel was called just "'Olu."   In December of 2018, Disney decided to expand the name to 'Olu Mel, with the "Mel" being short for "melody," in light of 'Olu Mel's musical nature.  Disney announced the name change on January 1, 2020." (SGD 74)

These two paragraphs show the contradictions.  First, he says Disney announced 'Olu Mel on July 20, 2018 and released 'Olu Mel on July 27, 2018 at Aulani and then in the very next paragraph states that the name of the character was changed from just 'Olu to 'Olu Mel on January 1, 2020.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

In other words, there was NO character called 'Olu Mel or any products or services offered by Disney under the moniker 'Olu Mel until 2020.

The truth is that the character was originally called Honu Kai until Disney's Hawaiian culture expert, Joe Rohde, advised them that Honu Kai was not a proper name for the character.  Disney then changed the name to 'Olu 'Olu, then just 'Olu and finally 'Olu Mel (after Plaintiff's Honu Mele series was released). (SGD 74,77, 277)

### 6. HAWAIIAN SEA TURTLE MAGICALLY TURNS INTO A HAWAIIAN "LAND TURTLE" AFTER THIS CASE WAS FILED.

From the inception of this case, Disney claimed that 'Olu Mel was a "land turtle" and yet Disney created, released and advertised 'Olu Mel as a musical Hawaiian sea turtle.  (SGD 258)

The truth is that Disney used the "honu" or Hawaiian sea turtle designation to launch their competing character and then conveniently decided to differentiate it, only after being sued, as a "land turtle", which would normally be called a tortoise, not a turtle. (SGD 74,77, 259) There are no native land turtles or, more correctly, tortoises, in Hawaii and, if there were, they would not be hanging out on the beach swimming and surfing, as Disney has depicted 'Olu. (SGD 276)

Disney is correct in claiming the chronology of events is important. The actual relevant chronology is as follows as evidenced by incontrovertible facts.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Plaintiffs created and publicly displayed the character on the left long before Disney "created" and displayed the one on the right: (SGD 196, 89)



Plaintiffs created and used in commerce the mascot on the left long before Disney started using the mascot on the right. (SGD 203, 232)



Plaintiffs' Honu mascot performed with Hello Kitty long before 'Olu performed with his Duffy friends, as seen below. (SGD 218, 220, 232)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

 

Plaintiffs' character was named Honu from its inception and then in 2018 the word "Mele" was added to Honu to refer to the musical series of entertainment goods and service. (SGD 224, 225)

## II.    LEGAL AUTHORITIES AND ARGUMENT

Standard of Review on a Motion for Summary Judgment

Summary judgment is appropriate 'if the court can conclude, after viewing the evidence and drawing inferences <u>in a manner most favorable to the non-moving party</u>, that no reasonable juror could find substantial similarity of ideas and expression.'" <u>L.A. Printex Indus. v. Aeropostale, Inc.</u>, 676 F.3d 841, 848 (9th Cir. 2012).

"On summary judgment, the inferences to be drawn from the underlying facts contained in the moving party's materials must be viewed in the light most favorable to the party opposing the motion," <u>United States v. Diebold, Inc</u>., <u>369 U. S. 654</u>. 655 (1962)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

The court must "assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1026 (9th Cir. 2013).

Furthermore, an undisputed fact may support several reasonable inferences, but a trial judge must resolve those differing inferences in favor of the nonmoving party. See <u>Tolan v. Cotton</u>, 572 U.S. 650, 660 (2014). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

A. <u>COPYRIGHT INFRINGEMENT CLAIM</u>

To prevail on a copyright infringement claim, a plaintiff must show that (1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work." <u>Williams v. Gaye</u>, 895 F.3d 1106, 1119 (9th Cir. 2018); <u>Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.</u>, <u>499 U.S. 340, 361</u>, (1991).

Copying may be established by demonstrating (1) "that the [defendant] had access to plaintiff's copyrighted work," and (2) "that the works at issue are substantially similar in their protected elements." <u>Cavalier v. Random House, Inc.</u>, <u>297 F.3d 815, 822</u> (9th Cir.2002). <u>Silas v. Home Box Office, Inc.</u>, 201 F. Supp. 3d 1158, 1171 (C.D. Cal. 2016).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Ownership of a valid copyright

 "A certificate of copyright constitutes prima facie evidence of ownership and originality of the work as a whole." <u>Johnson v. Gordon</u>, 409 F.3d 12, 17 (1st Cir. 2005); see also 17 U.S.C. § 410(c). Registration creates a presumption of copyright ownership and validity.

 Disney has presented no evidence to rebut the presumption that Plaintiffs own a valid copyright in every work for which they have a copyright registration, including the image of Honu depicted in 2D art and as used for the Honu mascot.

 Copyright in a character

 Disney argues that Honu is not a character because he did not have speaking lines in various musical shows called Honu by the Sea in 2014.  Yet, it is indisputable that Honu was the mascot for those shows and appeared in advertising and program materials and live on stage at the shows and interacting with the audiences and dancing with Hello Kitty. (SGD 217-220).

 "Although characters are not an enumerated copyrightable subject matter under the Copyright Act, *see* 17 U.S.C. § 102(a), there is a long history of extending copyright protection to graphically-depicted characters." <u>Daniels v. Walt Disney Co.</u>, 958 F.3d 767, 771 (9th Cir. 2020).  The Ninth Circuit has "establish[ed] a three-part test for determining whether a character in a comic book, television program, or motion picture is entitled to copyright protection." <u>DC</u>

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Comics v. Towle, 802 F.3d 1012, 1021 (9th Cir. 2015).  "First, the character must generally have physical as well as conceptual qualities"; second, "the character must be sufficiently delineated to be recognizable as the same character whenever it appears; third "the character must be especially distinctive and contain some unique elements of expression."  *Id.* (quotations omitted).  "'Whether a particular work is subject to copyright protection is a mixed question of fact and law.'"  *Id.* at 1022.

This Court has already ruled that Honu satisfied the requirements to be protectable as a character. Court's Order Denying Motion to Dismiss at pages 4-6.

Access

When courts say that the plaintiff must prove by a preponderance of the evidence that the defendant had access to the plaintiff's work, the question is what type of proof is required to defeat a motion for summary judgment where the only proof Defendant has is the self-serving denial of one artist who worked on the infringing work.

To demonstrate actual copying, a party may rely on either direct or circumstantial evidence. Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001)). Proving actual copying by direct evidence is generally a difficult task, because "plagiarists rarely work in the open and direct proof of actual copying is seldom available." Johnson v. Gordon, 409 F.3d at 18. "For this reason, parties typically rely on circumstantial evidence to prove that the defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

had access to the protected work and that the resulting product, when fairly

compared to the original, was sufficiently similar that actual copying may properly

be inferred." Society of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d

29, 49 (1st Cir. 2012).

As the court in Wilson v. Walt Disney Co., 123 F. Supp. 3d 1172, 1173-74

(N.D. Cal. 2015) states:

> "To get the "access" question to a jury, Wilson need not present
>
> evidence that the creators of the trailer actually viewed or copied the
>
> The Snowman. Nor is the Court permitted to credit the Disney
>
> witnesses' denials that they'd ever seen The Snowman. Wilson need
>
> only present evidence that people involved in the creation of the trailer
>
> had enough of a connection to The Snowman that there was a
>
> "reasonable possibility" that they had an "opportunity" to view or copy
>
> it. L.A. Printex Ind., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th
>
> Cir. 2012); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482, 484-
>
> 85 (9th Cir. 2000); 4 Nimmer on Copyright § 13.02."
>
> The Wilson court denied summary judgment even finding that
>
> "This connection is therefore less attenuated than in other cases where
>
> courts have let the question of access go to a jury. See, e.g., Three Boys
>
> Music Corp. v. Bolton, 212 F.3d at 482-85; Straughter v. Raymond,

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

2011 U.S. Dist. LEXIS 93068, 2011 WL 3651350, at *11 (C.D. Cal. Aug. 19, 2011); <u>Allen v. Destiny's Child</u>, 2009 U.S. Dist. LEXIS 63001, 2009 WL 2178676, at *5-7 (N.D. Ill. July 21, 2009); <u>Francescatti v. Germanotta</u>, 2014 U.S. Dist. LEXIS 81794, at *11-21 (N.D. Ill. June 17, 2014). For that matter, the connection is less attenuated than in the cases Disney relies on for the proposition that there is no access as a matter of law. *See, e.g.,* <u>Gable v. Nat'l Broad. Co.</u>, 727 F.Supp.2d 815, 824-29 (C.D. Cal. 2010); <u>Stewart v. Wachowski</u>, 574 F.Supp.2d 1074, 1088-89 (C.D. Cal. 2005); <u>Meta-Film Assoc., Inc. v. MCA, Inc.</u>, 586 F. Supp. 1346, 1355-56 (C.D. Cal. 1984)."

Whether a defendant actually viewed or copied the work is not relevant to the specific inquiry of whether it had the "opportunity" to do so. "The trier of fact may conclude that the person who created defendant's work had, but did not avail himself of, the opportunity to view, but this conclusion properly goes to the ultimate issue of copying, and not to the subordinate issue of access."

<u>Fun v. Leapfrog Enters.</u> 2010 U.S. Dist. Lexis 146641 (USDC Central Dist Calif 2010)

"Actual viewing of the protected material is not required to establish access; access means merely a reasonable opportunity to view the material. See <u>Grubb v.</u>

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996). And as previously stated, Plaintiff

sufficiently established through uncontested material facts that Defendants had an

opportunity to see the Nativity Collection. Further adding to the inference of actual

copying, Plaintiff has shown sufficient uncontested material facts to establish

probative similarity." Coquico, Inc. v. Rodriguez-Moranda, 562 F.3d 62, 67 (1st Cir

2009) ("What we have called "probative similarity" can, when accompanied by

proof of access, serve as harbinger of actual copying.").

When the evidence of access is circumstantial, a plaintiff may prove access

by establishing a chain of events linking the work and defendants' access to that

work, or showing that the work was widely disseminated. Loomis, 836 F.3d at 995.

"Widespread dissemination, for example by 'extensive publication' may be

sufficient to demonstrate a reasonable likelihood of access." "Crediting as true—as

I must at this stage—the statement by Casa Febus that its president never received

Plaintiff's proposal, does not negate that access has been established". Feldman v.

Twentieth Century Fox Film Corp., 723 F. Supp. 2d 357, 365 (D. Mass. 2010),

quoting 4-13 Nimmer of Copyright § 13.02.

None of the cases that Disney cites in support of their contention that

Plaintiffs cannot satisfy the evidentiary requirements to prove access are applicable

or convincing.

- 23 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Disney cites <u>Bernal v. Paradigm Talent and Literary Agency</u>, 788 F.Supp.2d

(C.D, Cal 2010) for the sweeping and inaccurate proposition that Plaintiffs' must

prove that Fabiola Garza had direct access to Plaintiffs' Honu intellectual property.

In the <u>Bernal</u> case and all of the cases cited by the court in <u>Bernal</u> and in Disney's

Motion, the proof that was deemed insufficient was proof that the work was or

could have been viewed by an <u>independent intermediary NOT the defendant who is</u>

<u>accused of copying</u>. In <u>Bernal</u>, it was defendant Marc Cherry's independent agent.

Disney cites the case of <u>Loomis v. Cornish</u>, 836 F.3d (9th Cir 2016).  In that

case, a songwriter claimed a team of high-profile songwriters stole a two-measure

vocal melody, but had no evidence whatsoever that the songwriter defendants had

any access to his song.  He asserted access only through intermediaries who had

some business relationship with the defendant.

In <u>Jones v. Blige,</u>568 F.3d 485 (6th Cir. 2009), it was someone at Universal

who had a business relationship with Mary J. Blige.

In <u>Meta-Film</u>, it was an independent director with projects at the same studio.

Furthermore, in none of these cited cases was there any significant proof of

widespread or any dissemination of the plaintiff's work.

Here, there is a mountain of evidence that several of the infringer's own

high level and influential employees were aware of and viewed or had the

opportunity to view Plaintiffs' Honu intellectual property, as well as other

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

evidence that Disney had long-term creative dealings with Enos and knew that he was a stand-out representative of Hawaiian art and culture and had sought his advice on those subjects in the recent past. (SGD 173, 174, 182-186) Thus, there is sufficient evidence for a jury to conclude that Disney copied the intellectual property.

In addition, Plaintiffs' have submitted substantial evidence that the works were widely disseminated by worldwide performances, on a Youtube channel, elsewhere on the internet, through products that were sold or used for promotion and in a major entertainment periodical, Variety, which included feature articles on Disney creative personnel. (SGD 198-221)

The only proof Disney offers to contradict that is the self-serving testimony of Fabiola Garza, one of the many Disney employees who worked on the creation of 'Olu Mel. There was a team of over 20 people who worked on and/or had supervisory approval on the project. (SGD 241)

Oddly, there are no declarations from any of the 20 other Disney employees who worked on the 'Olu Mel project and were part of the "team" assigned to the project or from Marilyn Magness, Shelby Jiggets, or any of the other Disney employees who Enos has testified were made aware of or saw Honu.

<u>Substantial Similarity</u>

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

The question of substantial similarity is a question of fact for the jury to determine.

"To gauge substantial similarity . . . courts often employ an "ordinary observer" test. Under that metric, the allegedly infringing work will be deemed substantially similar to the allegedly infringed work if an <u>ordinary observer</u> would be disposed to overlook any disparities in the works." <u>Coquico, Inc.</u>, supra at 67. Importantly, "*[s]ubstantial similarity does not mean absolute identicality.*" Id. at 70.

"Indeed, substantial similarity does not require that each and every element of the overall works in question be substantially similar. "It is entirely immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of plaintiffs work can be shown." 4-13 Nimmer on Copyright §13.03.

The court must also consider the intended audience, as stated in <u>Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corporation</u>, 562 F.2d 1157, 1166 (9th Cir 1977):

> "The present case demands an even more intrinsic determination because both plaintiffs' and defendants' works are directed to an audience of children. This raises the particular factual issue of the impact of the respective works upon the minds and imaginations of young people. As the court said in <u>Ideal Toy Corp. v. Fab-Lu Ltd.</u>, 261

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

F.Supp. 238, 241-42 (S.D.N.Y.1966), aff'd, 360 F.2d 1021 (2 Cir. 1966):

> "In applying the test of the average lay observer, (children) are not to be excluded indeed they are the 'far-flung faithful . . . audience.' The television advertising campaign of plaintiff was directed toward acquainting these youngsters with . . . its new teenage and pre-teen dolls. The impression of the faces and general appearance of the dolls was upon them. . . . (T)he dolls create the same impression, both with respect to their appearances and the play uses for which they are suited. It is the youngsters who, on the basis of this impression, go to the stores with their parents or at home make their wishes known for the dolls they desire after television has made its impact upon them. In their enthusiasm to acquire . . . (the dolls) they certainly are not bent upon 'detecting disparities' or even readily observing upon inspection such fine details as the point at which the necks are molded" (citations and footnotes omitted)."

Expert opinion can be used to create a triable issue of material fact to preclude summary judgment. The Court cannot weigh or disregard the parties' expert reports. See T.W. Elec. Serv., Inc. V. Pacific Electric Contr., 809 F.2d 629, 630 (CD Cal. 2005). Therefore, there is a genuine issue of triable fact precluding

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

summary judgment on the issue of substantial similarity based on the dueling expert

opinions submitted by the parties. See <u>Hall v. Swift</u>, 2021 U.S. Dist. LEXIS 245750,

2021 WL 6104160, at *5 (C.D. Cal. Dec. 9, 2021); <u>Lewert v. Boiron, Inc</u>., 212 F.

Supp. 3d 917, 937 (C.D. Cal. 2016), aff'd, 742 F. App'x

282 (9th Cir. 2018).

<u>Woodall v. Walt Disney Co.</u>, 2024 U.S. Dist. LEXIS 219909

<u>Independent Creation</u>

Disney's claim of independent creation erroneously assumes that evidence

that Disney independently created an image of 'Olu with a ukulele defeats Plaintiff's

copyright infringement claims.

"Here, the undisputed facts establish that Defendants created their blue-eyed,

ukulele-playing turtle character first, which means that "copying: was in a

word, impossible."

This is a <u>complete misrepresentation of the facts</u>.

The fact is that the Honu character, even without the ukulele, is strikingly

similar to Disney's later-created 'Olu Mel character, including incorporating the

theme of a music-loving Hawaiian sea turtle, whether through the use of a ukulele or

otherwise.

If substantial similarity is found, the defendant will not be immunized from

liability by reason of the addition in his work of different characters or additional

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

and varied incidents, nor generally by reason of his work proving more attractive or saleable than the plaintiff's.  Baxter v. MCA, Inc., 812 F.2d 421(9th Cir 1986)

Even assuming that Disney's depiction of 'Olu Mel with a ukulele was not copied, it is a derivative of the protected work. Disney seems to think that Plaintiffs' case is destroyed by Disney's claim that Plaintiffs did not publicly release a graphic of Honu playing a ukulele until after Disney did.

One could make the same argument in creating a Mickey Mouse look-alike character holding a new item, such as a cell phone or beer mug.

See, Gregorini v. Apple Inc., 2024 U.S. Dist. LEXIS 214480

B. LANHAM ACT SECTION 43 CLAIM

Liability

Section 43(a) of the Lanham Act provides in pertinent part that

"(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

person, or as to the origin, sponsorship, or approval of his or her goods,

services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature,

characteristics, qualities, or geographic origin of his or her or another

person's goods, services, or commercial activities, shall be liable in a

civil action by any person who believes that he or she is or is likely to

be damaged by such act."

Disney tries to pigeonhole Plaintiffs' Lanham Act claim by asserting that it does not fit within any particular box of trademark infringement claims.

It will not fit because it is not linked to any one particular trademark or act of infringement by Disney.  It consists of Disney's creation of reverse confusion by doing exactly what the language of the statute contemplates:

using in commerce any combination of words, terms, names, symbols,

or devices, or any false designation of origin, false or misleading

description of fact, or false or misleading representation of fact.

Plaintiffs are not required to prove infringement of a registered trademark or even an unregistered trademark to prevail on a Lanham Act 43(a) claim.

A Section 43(a) action does not depend on whether the Plaintiff has a federally registered trademark or copyright.  The action may be based on unregistered trademarks or trade dress.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205 (2000).

Duncan McIntosh Co. v. Newport Dunes Marina LLC, 324 F. Supp. 2d 1078 (C.D. Cal. 2004), aff'd, 120 Fed. Appx. 119, 2005 U.S. App. LEXIS 730 (9th Cir. 2005).

Nowhere in Section 43(a) is there any mention of whether the wrongful acts giving rise to the cause of action depend on the allegation or proof of any trademark or copyright infringement.  The key issue is whether the defendant is using words, terms, names, symbols, or devices, or any combination thereof in manner which is likely to cause the confusion addressed in the statute.

Angry chickz, Inc. v. Bosphorus Trade, Inc._2024 U.S. Dist. LEXIS 144348

Luna Distrib. LLC v. Stoli Grp. United States, LLC_2018 U.S. Dist. LEXIS 233024

These words, terms, names, symbols and devices, and combination of them, and false or misleading advertising and designations of origin are:

The use of 'Olu Mel's name and likeness to market and sell products which Plaintiffs have previously distributed and for which Plaintiffs' have registered trademarks with their Honu name and likeness.

The use of the name 'Olu which is similar to Honu.

Changing the name from 'Olu to Olu Mel in 2020 after Plaintiffs added Mele to their Honu character and products when they released their Honu Mele series in 2018.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

Using a mascot starting in 2021 to sell their products which is confusingly similar to the Honu mascot which was in use in 2015 in the same geographical locations in Hawai'i, Tokyo and other geographical locations where the parties compete for the young children's market.  (SGD 231, 232)

Using 'Olu Mel as an identifier on ukuleles after Plaintiffs had started selling ukuleles under the "Honu Mele" moniker and graphic.

Using almost identical graphics such as those below to promote and sell their products (using a key element of the Honu by the Sea show – pink sea star)

 

 

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

1    Promoting World Ocean Day as show below, after Plaintiffs had done so

2  years before.

 

Calling 'Olu Mel a Hawaiian sea turtle, when, by their own admission, he is a

land turtle or actually a tortoise.

Misrepresenting to the public that 'Olu Mel is native to Hawaii and represents

Hawaiian culture, when, by their own admission, he is a land turtle or tortoise, not

indigenous to Hawai'i.  These misrepresentations are damaging to Plaintiffs who

spent years and a lot of money to position Honu as the first and primary benevolent

musical blue-eyed Hawaiian sea turtle.

Disney's contention that it independently created the 'Olu character and

artwork is irrelevant to the Lanham Act claim. The date of use in commerce is the

issue, not the date of creation of the artwork.  The evidence is clear that Plaintiffs

used the artwork, names and devices in question before Disney used confusingly

similar ones.  In addition, the analysis of whether a trademark is confusingly similar

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

to another trademark is not the same as the analysis of whether an image or

character is substantially similar to another in considering copyright infringement.

Plaintiffs were in the market with Honu and Honu Mele on goods and

services long before Disney was with 'Olu and 'Olu Mel, although Disney tried to

pull a fast one by filing improper trademark applications for "'Olu Mel a Disney

Friend of Duffy".

Looking at the factors outlined in AMF Inc v. Sleekcraft Boats, 599 F.2d 341

(9th Cir. 1979) as to likelihood of confusion:

As Disney correctly states, in a reverse confusion case, the inquiry focuses on

the strength of the junior mark because the junior mark is so strong as to overtake

the senior mark.  Then, Disney argues that there is no evidence that Disney

extensively advertised or marketed 'Olu Mel throughout the U.S. This is clearly not

true by Disney's own admission in SUF 94 and 95.

Similarity of the marks has already been reviewed by the Court in denying the

Motion to Dismiss.

Proximity of the goods – Both are heavily promoted and marketed in Hawai'i.

Marketing and Distribution Channels – Both marketed at theme parks and

similar locations.

Purchaser Sophistication – Primarily children.  In considering the likelihood

of confusion in the marketplace, the court must consider the consumer of the goods

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

or services and where the consumers are children, children may be more prone to

confusion than sophisticated consumers or adults.  <u>Mattel, Inc. v. MCA Records,</u>

<u>Inc.</u>, 1998 U.S. Dist. Lexis 7310, 46 U.S.P.Q. 2D (BNA) 1407, 1444 (1998).

Actual Confusion – There is ample evidence that consumers may be confused

and, in fact, are definitely confused as to whether 'Olu Mel is actually Honu, the

original blue-eyed musical Hawaiian sea turtle rather than a land turtle visiting

Hawai'i. (SGD 280, 281)

Intent - Clearly Disney's five trademark applications with incorrect

specimens, adding "Mel" to 'Olu's name right after Honu Mele was released,

marketing 'Olu as a Hawaiian sea turtle when he was allegedly a land turtle are all

indications that Disney's unfair competitive behavior was intentional.

Laches Defense

The mere fact that Enos was informed that Disney was creating a turtle for

Aulani would not be sufficient for him to initiate any action for copyright or

Lanham Act violations.  It is likely that no cause of action had accrued until at least

Spring 2020 when Disney started marketing 'Olu Mel and started releasing

competitive products and in 2021 their own mascot to promote the sale of 'Olu Mel

products.  Laches is a very fact intensive defense and each case depends on the

particular facts related to the delay and prejudice. Disney's laches authorities are not

controlling or convincing.  <u>Jarrow v. Formulas, Inc. v. Nutrition Now,</u> 304 F.3d829

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

(9th Cir. 2002) involved a delay of 7 years, <u>Grupo Gigante SA De CV v. Dallo &
Co.</u>, 391 F.3d1088 (9th Cir. 2004) a delay of 8 years, <u>E Systems, Inc. v. Monitek</u>,
720 F.2d 604 (9th Cir. 1983) a delay of 6 years, and <u>Internet Specialties W., Inc. v.
Milon-DiGiorgio Enters.</u>, 559 F.3d 985(9th Cir. 2009) a delay of 7 years (and the
court found against laches). Laches is not a favored defense in Lanham Act cases.
<u>GoTo.Com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199 (9th Cir Cal 2000).

Laches is a highly disfavored defense and should not be a bar to a plaintiff
who continues to suffer damage as a result of a defendant's continuing wrongdoing.

See. <u>Petrella v. Metro-Goldwyn-Mayer</u>, 572 U.S. 663(2014)

<u>SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC,</u>, 580
U.S. 328 (2017)

CONCLUSION

For the foregoing reasons, Disney's Motion for Summary Judgment should be
denied and this case should proceed to trial before a jury.

Respectfully submitted,

DATED: March 6, 2025                    AARONSON & AARONSON


                                        By:<u>/s/ Arthur Aaronson</u>
                                        ARTHUR AARONSON
                                        Attorneys for Plaintiffs JOHN WILLIAM
                                        KAIPO ENOS and JOHNSON
                                        ENTERTAINMENT, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

## CERIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs herein, certifies that this Memorandum of Points and Authorities consists of 30 pages and complies with the page limit set by the court order dated February 10, 2025.

Dated:  March 6, 2025          /s/ Arthur Aaronson_____

ARTHUR AARONOSON

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

- 37 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**